## S. W. PARRISH ET AL. V. MARY K. MILLS ET AL.

### No. 1756. Decided January 15, 1908.

**1.—Construction—Trust Deed—Intention.**

It is a cardinal rule in the construction of deeds that the intention of the donor must govern, and that in arriving at that intention every part of the instrument is to be considered. See trust deed construed to show an intent to provide a support for the beneficiaries for life, which is held to control the effect of a particular clause terminating the trust on the death of the last trustee and providing for distribution of the corpus of the trust estate to lineal descendants of beneficiaries. (Pp. 282–285.)

**2.—Lineal Descendant—Issue.**

Lineal "descendant" technically signifies the issue of a deceased ancestor; while there could be no "descendant" of a living person, "issue" includes children of one living; but, popularly, "descendant" is sometimes used, in the sense of "issue," to designate children of living persons. (Pp. 283, 284.)

**3.—Trust deed Construed.**

A grantor conveyed property to four trustees, the trust to survive "to the limit of the life of the last" for the benefit of the widow and the four children of his deceased brother, with directions as to the application of the revenue in various contingencies. It was provided that, "when the particular estate hereby and above created in said trustees should expire by the death of the last one, the 'lineal descendants' of the four children named should be entitled to take the property per stirpes. On the death of the last trustee there survived the brother's widow, and three of his children with their issue, and the descendants of the remaining beneficiary, who had died. Held: (1) That the words "lineal descendants," in the clause devolving the title to the property upon them on death of the trustees, were used by the grantor in their technical signification, meaning issue of deceased beneficiaries; (2) That the provision in question did not apply where the widow and other beneficiaries survived all the trustees; (3) that the trust was not terminated by the death of the last trustee under such circumstances; (4) That the court could appoint a trustee to carry it out

during the life of the beneficiaries, according to the apparent intent of the grantor that they should be provided for during life; (5) That neither the habendum clause of the deed, which was to the trustees for life, nor a provision that the last surviving trustee should provide by will for the distribution of the corpus of the trust estate on his death were controlling or required the deed to be otherwise construed. (Pp. 278–285.)

**4.—Res Adjudicata.**

A judgment in a former suit, appointing a substitute on the resignation of one of the trustees of certain property, that the trust should terminate on the death of the last of the original trustees named in the deed did not appear to be an adjudication that such was the proper construction of the deed of trust in the absence of evidence showing that the pleadings called for judicial construction of the effect of the trust deed in respect to such matter. (P. 285.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

Parrish and others sued Mills and others for recovery and partition of property. Defendants had judgment. Plaintiffs appealed and on affirmance obtained writ of error.

*Z. T. Fulmore, D. W. Doom* and *D. H. Doom,* for plaintiffs in error.—The court erred in its conclusion of law to the effect that the deed of trust vested in the beneficiaries an estate for their own lives in the incomes and revenues to be derived from said trust estate by said deed of trust created, and that their respective estates and interests, did not determine and cease by the death of all of said trustees in said deed of trust mentioned, but that it was the purpose and intention of said instrument that said beneficiaries aforesaid should have and enjoy the said incomes and revenues from said trust property for and during their own lives, and that said trust estate was not to terminate until each and all of said beneficiaries were dead. 24 Amer. & Eng. Enc. of Law, (2nd ed.) 383; Ellison v. Airey, 27 Eng. Rep., 924; Ayton v. Ayton, 29 Eng. Rep., 1188; Walker v. Johnston, 70 N. C., 546; Hills v. Barnard, 25 N. E. Rep., 96; Brown v. Wright, 80 N. E. Rep., 612.

The court erred in admitting in evidence over the objection of plaintiffs the testimony of Mary J. Hamilton as bearing upon the construction of the written deed in trust, to the effect that Morgan Hamilton had provided for Mary J. Hamilton from about the year 1874 two hundred dollars a month until he executed the deed in trust, and told her after the execution of the deed in trust that he had provided for her and her daughters as long as they lived and especially for her, and that after that time the two hundred dollars per month ceased.

The court erred in failing to find that the question of the construction of the said deed in trust was res adjudicata, having been adjudicated by the judgment in cause No. 20,419, Robert A. Smith v. Mary J. Hamilton et al., in the District Court of Travis County, Texas, for the Fifty-third Judicial District, in which all of the present plaintiffs and defendants were parties, by a decree of said court made and entered on the 15th day of April, A. D. 1904, as shown in the second conclusion of fact.

The court erred in appointing W. H. Folts trustee to take charge of the said trust estate, the said trust having ended by the terms of the said deed in trust.

*Newton & Ward,* for defendants in error.—The deed of trust when properly construed in the light of all the attending circumstances, in view of the relation of the parties, their respective pecuniary conditions, what the grantor had done in the past for the beneficiaries, etc., clearly manifests the general scheme, purpose and intent of the grantor to give the beneficiaries an estate for their own lives in the income of the trust property and not for the lives of the trustees, and any part of the deed of trust in seeming conflict with this general scheme, purpose and intent of the grantor must give way to this general purpose, scheme and intent of the grantor. The court, therefore, did not err in its construction of the deed of trust and in appointing a trustee to execute the same. Hancock v. Butler, 21 Texas, 806; Pugh v. Mays, 60 Texas, 192-3; Smith v. Brown, 66 Texas, 545; McMurry v. Stanley, 69 Texas, 250-1; Moore v. City of Waco, 85 Texas, 211; Cannon v. Vaughan, 12 Texas, 401; Colton v. Colton, 127 U. S., 300; note in case of Harrison v. Harrison, 44 Am. Dec., 372; note to Knox v. Knox, 48 Am. Rep., 494; 28 Am. & Eng. Enc. of Law, 910; Dexter v. Episcopal City Mission, 134 Mass., 397; State v. Trask, 6 Vt., 355; 27 Am. Dec., 555.

It is perfectly manifest that it was the intention of the grantor, Morgan Hamilton, to give to the beneficiaries the income of the trust property for and during their own lives; that if such be his intention, appellants must fail in their contention, unless the court will hold that the mere machinery selected by the grantor to carry out his intention would be superior to the intention itself, and that because the machinery has broken down by the unexpected deaths of all the trustees, such intention can not be given effect to. Descendants can not be construed to include any but lineal heirs without clear indication of a contrary intention. Thus the term does not include collateral relations, nor ancestors. 9 Am. & Eng. Enc. Law, 399; Jewell v. Jewell, 28 Cal., 236; Hamilton v. Osgood, 1 Redf. (N. Y.), 409.

The court did not err in admitting in evidence the testimony complained of because the same was not only legal, but no specific objection was made to the testimony in the court below and no bill of exception taken to the ruling of the court. Hagerty v. Scott, 10 Texas, 533; Schoch v. City of San Antonio, 57 S. W. Rep., 893; Ramm v. Galveston, H. & S. A. Ry., 14 Texas Ct. Rep., 866.

The court did not err in holding that the judgment in cause No. 20419 was not res adjudicata of the issues involved in this suit, for the reason that the sole purpose and object of that suit was to relieve the trustee Robert A. Smith from the active management of the property and to appoint an assistant trustee—the decree itself expressly stating that it should not operate for any other purpose.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court. This action was brought by the plaintiffs in error to recover of

defendants in error certain property, real and personal, in the petition described. All parties claim under a deed of trust executed by Morgan C. Hamilton to Frank Hamilton, James R. Johnston, T. F. Mitchell and Robert A. Smith, trustees. Since the decision of the case depends upon the construction of that deed, we here set it out in full. It reads as follows:

"State of Texas, Travis County. Know all men by these presents: That I, Morgan C. Hamilton, of the county of Kings, in the State of New York, for and in consideration of the natural love and affection that I have for the surviving family of my late brother Andrew J. Hamilton, viz.: his widow, Mary J. Hamilton, who resides in Travis County, in the State of Texas; and his daughters, Mary Mills, nee Hamilton, wife of W. W. Mills, who resides in El Paso, Texas; Bettie Woodburn, nee Hamilton, wife of Frank Woodburn, who resides in Waco, McLennan County in the State of Texas; and Lillie Maloney, nee Hamilton, wife of Jas. P. Maloney, who resides in the city of St. Louis, in the State of Missouri, and Frank Hamilton, who resides in Travis County in the State of Texas; and wishing to provide as safely and permanently as possible for their comfort, maintenance and support, have given, granted and conveyed, and by these presents do give, grant, aliene, convey, allot, set over and deliver unto the said Frank Hamilton, Jas. R. Johnson, T. F. Mitchell and Robert A. Smith, jointly, the following real estate and personal property, viz.:

"First. All and singular that certain lot of land in the said State and County, known and designated on the maps of the city of Austin as lot No. seven (7) in block No. forty-three (43), situated on the corner of Colorado and Pine streets, within the said city.

"Second. I have elected, set apart, transferred and delivered unto the trustees aforesaid personal property consisting of bonds secured by mortgage, bonds secured by the vendor's lien and cash to sum and value of sixty-two thousand ($62,000) dollars.

"To have and to hold all and singular the lands, premises, funds and credits aforesaid, unto them, the said Frank Hamilton, Jas. R. Johnson, T. F. Mitchell and Robert A Smith, and to the survivors and survivor of them for and during their natural lives and unto the limits of the life of him of them who shall latest survive.

"In trust nevertheless, and with the powers and obligations, and for the uses and purposes hereinafter set forth, that is to say:

"First. That power of the said trustees is joint, so long as more than one of them remain alive; and so long as so many as three (3) of them are alive; the signature of a majority of them shall be necessary in all acts, the evidence of which, under the laws of the State of Texas, is required to be registered as notice to third parties; and when but two (2) of them remain alive, then all such acts as are designated by this clause shall require to be subscribed by both; and when but one survives, his separate act and deed shall be valid and binding on this trust estate.

"Second. As to all transactions, the evidence of which is not required by law to be registered, the said trustees or a majority of them may by written instrument, duly executed, acknowledged and

registered, select and appoint one of their number who shall thereupon have the management, control and determination of such business as is described or indicated in this clause, and so far as the beneficiaries under this trust and third parties are concerned, the action of such selected trustee shall be valid; it shall be competent, however, for the majority of said trustees to revoke such appointment by a written instrument such as is required above for his appointment; in case one of said trustees shall remove from the State of Texas with the intention of remaining away, he shall be regarded to all intents and purposes as dead.

"Under the limitations above prescribed, the powers of the said trustees are in all respects as ample as if this deed were to them in fee simple and for their own use and benefit.

"Third. Said trustees are hereby instructed and enjoined to invest and keep the body of this donation invested so far as they may be able, in improved city real estate, using, however, their best discretion and judgment, in view of the welfare of the beneficiaries of the trust, as to the time when such investments shall be made.

"Fourth. The said trustees shall collect the annual rents, interest and revenue of whatsoever kind arising from or growing out of all investments of the said fund, as well from those now on hand as those to be made hereafter, and shall apportion and distribute said annual income as follows—that is to say:

"(a) They shall first set apart and appropriate a sum of cash sufficient to meet and satisfy all obligations and expenses of whatsoever kind growing out of or necessary for the proper conduct of said business, including taxes, insurance and repairs.

"(b) Annually or oftener if in their judgment it can be consistently done, they shall divide the net revenue at that time in their hands into five (5) shares, and shall distribute them as follows, viz.: They shall pay to the said Mary J. Hamilton two (2) shares, to the said Mary Mills one (1) share, to the said Bettie Woodburn one (1) share, and to the said Lillie Maloney one (1) share; and the receiving of her distributive share aforesaid of the net annual accretions of the said fund as aforesaid, is the full limit of the rights of the said distributees in said fund during the existence of the particular estate hereby vested in said trustees.

"(c) In the event of the death of the said Mary J. Hamilton, the said trustees shall apportion the said annual net revenue into three (3) equal distributive shares and shall pay one (1) of such shares to each of said distributees, viz., Mary Mills, Bettie Woodburn and Lillie Maloney.

"(d) In the event of the death of the said Mary J. Hamilton, and one or more of the other named distributees without lineal descendants, the said net annual revenue shall be equally divided, share and share alike, between the survivors and the said Frank Hamilton.

"(e) In the event of the death of either the said Mary Mills, Bettie Woodburn or Lillie Maloney without lineal descendants, the said Mary J. Hamilton being still living, the net annual revenue shall be divided into (5) equal shares, two (2) of which shares shall be

paid over to said Mary J. Hamilton, and one (1) share to each of the other living distributees.

"(f) In the event of the death of two of the said distributees, Mary Mills, Bettie Woodburn and Lillie Maloney without lineal descendants, the said Mary J. Hamilton being still alive, the said annual revenue shall be still divided into five (5) equal shares, two-fifths (2-5) to be paid over to the said Mary J. Hamilton and the remaining three-fifths (3-5) to be equally divided between the survivor of the said three sisters and the said Frank Hamilton.

"(g) When one or more of the said distributees, Mary Mills, Bettie Woodburn, Lillie Maloney or Frank Hamilton shall have died leaving lineal descendants such descendants shall take or be entitled to take the share of the said net annual revenue the deceased parent would have been entitled to, had he or she continued living.

"(h) In the event of death of all of said distributees except the said Frank Hamilton without lineal descendants surviving them, then in that case the particular estate hereby created in said trustees shall terminate and the said Frank Hamilton, his heirs or assigns be entitled to demand from his co-trustees, a quit-claim of all their interest in the said property, and the said Frank Hamilton shall thereupon take, have and hold all and singular the said entire property to his, his heirs and assigns own proper use and behoof forever.

"Fifth. When the particular estate hereby and above created in said trustees shall expire by the death of the last one—them, as is before provided shall be the case, then the lineal descendants of the said Mary Mills, Bettie Woodburn, Lillie Maloney and Frank Hamilton shall be entitled to take the body of the said fund, and in that case they shall take per stirpes for their own use and behoof, and have and hold the same to them, their heirs and assigns forever.

"Sixth. I hereby direct and require that the last of the said trustees who shall be acting in this behalf, shall provide by his last will and testament for the immediate partition and distribution of the body of this fund in accordance with section fifth of this deed.

"Interlineations made before signing as follows: Second page, twenty-eighth line, "majority;" fourth page, thirty-first line, "annual;" sixth page, tenth line, "of the said net annual revenue."

"The beneficiaries or cestuis qui trust herein, shall at no time demand, take or hold any other interest or estate in any of my property, real, personal, or mixed, within the State of Texas, than that herein granted.

"Witness my hand at Austin, in the State and county first above written, this the second day of May, A. D. 1883. MORGAN C. HAMILTON."

It was alleged and proved, that all of the trustees were dead at the time the suit was brought, and the claim of the plaintiffs in error is that they, as the surviving issue of Mary Mills, Bettie Woodburn, Lillie Maloney and Frank Hamilton, were entitled under the fifth clause of the deed to the property in fee simple.

The following facts are stated in the opinion of the Court of Civil Appeals as being supported by the evidence:

"It was shown by undisputed testimony that Morgan C. Hamilton and all of the trustees named in the deed in trust are dead, and that R. A. Smith who survived the other trustees, died on the 7th day of March, 1906. It was shown by like proof that all of the beneficiaries named in the trust deed, except Frank Hamilton, were still living.

"There was no conflict in the testimony, except as to the value of the A. J. Hamilton homestead. The trial judge found, and the finding is supported by testimony, that it is worth $8000, and rents for .$20 per month." .∵ . . "According to the record in this case, the grantor in this instrument had never married, but had acquired a fortune. His brother, A. J. Hamilton, at one time Governor of Texas, died in 1875, leaving a wife and several children surviving him, and very little property outside of a fifty acre homestead. The proof shows that shortly before Gov. Hamilton's death, his brother, Morgan C. Hamilton, commenced donating to the former's wife, presumably for the use of the family, $200 per month; that this donation was continued up to the time of the execution of the instrument under consideration, and was discontinued thereafter. It was also shown that on the same day, and soon after the execution of the instrument, Morgan Hamilton went to his sister-in-law, the widow of Gov. Hamilton, and told her, in substance, that he had provided for her and her daughters as long as they might live. It was also shown that aside from her homestead neither Mrs. Hamilton nor her daughters had any property of their own at the time the instrument was executed, and that Morgan Hamilton knew that fact. The testimony further shows that most of the plaintiffs in this case, who are the children of Mrs. Woodburn and Frank Hamilton, were born after the deed of trust was made. . . . The testimony shows that at the time the instrument was executed Morgan Hamilton, the grantor, was an old man; that he came from Brooklyn, New York, where he was then residing, to Austin, Texas, for the purpose of making provision for the support of his deceased brother's family out of his own large estate."

It is a cardinal rule in the construction of deeds, that the intention of the donor must govern; and it is one equally familiar that in arriving at that intention every part of the instrument must be considered. The instrument in question leaves no doubt as to its purpose. The declaration, "wishing to provide as safely and permanently as possible for their comfort, maintenance and support," shows clearly that the intention was to provide, not only for the maintenance, but also for the comfort of the family mentioned, and further that the provision should be permanent—that is to say, as long as they might live.

· In the fourth paragraph of the deed provision is made for the distribution annually of the net proceeds of the fund, and in subdivision (b) it is provided that the proceeds shall be divided into five equal shares, of which Mrs. Hamilton is to receive two shares, and each of the other beneficiaries one share each. In subdivision (c) provision is made for the case of the death of Mrs. Hamilton— that is to say, in case of her death, the proceeds are to be divided

into three shares, of which each of the beneficiaries is to receive one share. In subdivision (d) provision is made in case of the death of Mary J. Hamilton and one or more of the other beneficiaries named above, without lineal descendants, the net proceeds of the fund are to be equally distributed between the surviving beneficiaries previously named and Frank Hamilton. In subdivision (e) it is declared that in case of the death of Mary Mills, Bettie Woodburn or of Lillie Maloney, Mary J. Hamilton still living, the net proceeds are to be divided into five equal shares of which Mrs. Hamilton is to receive two and the other living distributees one share each. Subdivision (f) provides that in case of the death of two of the daughters without lineal descendants, Mary Hamilton being still alive, she shall take two-fifths of the proceeds of the property and the other three-fifths shall be equally divided among the survivor of the three sisters and Frank Hamilton. Subdivision (g) provides that when one or more of the beneficiaries shall die, leaving lineal descendants, such descendants shall be entitled to the deceased ancestor's share. And by subdivision (h) it is declared that in the event of the death of all the beneficiaries except Frank Hamilton, without lineal descendants, he shall take the estate discharged of the trust.

Next follows paragraph fifth, which gives rise to the difficulty in this case. We quote it again: "When the particular estate hereby and above created in said trustee shall expire by the death of the last one—them, as is before provided shall be the case, then the lineal descendants of the said Mary Mills, Bettie Woodburn, Lillie Maloney and Frank Hamilton shall be entitled to take the body of the said fund, and in that case they shall take per stirpes for their own use and behoof, and have and hold the same to them, their heirs and assigns forever." Now in construing this provision it is important to ascertain the precise sense in which the grantor used the words "lineal descendants." Did he mean the issue of the living beneficiaries, or the issue of those who were dead? In Barclay v. Cameron, 25 Texas, 233, Chief Justice Wheeler says: "Descent, or hereditary succession, is the title whereby a person on the death of his ancestor, acquires his estate as his heir at law." And in Hillen v. Iselin (144 N. Y., 374) the Court of Appeals of New York say: "The main ground of assault upon the validity of the appointment of the remainder by the will of Emily Hillen to the child or children of her son Thomas, is that such child or children were not at the death of his mother, descendant or descendants in a legal sense of their father, who was then living, and were not, therefore, objects of the power under the will of Columbus O'Donnell, which authorized an appointment to the "child or children of my (his) daughter Emily, or his, her or their descendant or descendants." The learned counsel for the appellant has shown that the word "descendant," according to its accurate lexicographical and legal meaning, designates the issue of a deceased person, and does not describe the child of a parent who is still living. The word is the correlative of ancestor. The word issue is a word of broader import and may include the children of a living parent as well as the children or

descendants of one who is dead.   But in an accurate sense one can not have a living ancestor, nor càn a living person, although he may have children, have descendants."   This seems to be based upon the theory that since property only descends upon the death of the ancestor the issue of a living ancestor is not a descendant of such ancestor.   But since in a popular sense the words are sometimes used in the sense of issue from a living person we think we should look to the whole instrument in order to determine the signification the grantor had in mind when he used them.   In the case above cited of Hillen v. Iselin, the Court of Appeals of New York held that the word was not used in "its accurate lexicographical and legal meaning" but in its popular sense and gave judgment accordingly.   If the words were used in their technical sense, then the issue of the beneficiaries named in the fifth paragraph of the deed, could not take until the beneficiaries were all dead.   Hence while the paragraph contains but one express provision, there would be another necessarily implied; the one that the trustees shall all be dead and the other that all the beneficiaries shall have departed this life—provided, always, that the grantor by lineal descendants meant descendants from deceased persons and not from living persons.   Conceding that the technical sense does not necessarily apply we are driven to the instrument and to every part of it to determine, in what sense the grantor employed the terms.   In the first place we have seen that the declared purpose of the instrument is to provide permanently for the comfort and support of the beneficiaries named.   In the fourth paragraph provision is made for the contingency of the death of one or more of the beneficiaries (one or more of them surviving) and it is declared that the fund shall be divided into certain proportions named among the survivors and the lineal descendants of those who may be dead.   Here the words show expressly that they are used in the sense of descendants of a dead ancestor.   What more natural than that after providing with great particularity what shall be done in case of the death of one or more of the beneficiaries (another or others surviving), the grantor should have provided for a case in which all the trustees and all the beneficiaries should die.   What more reasonable in such a contingency than that he should devolve the corpus of the estate upon the lineal heirs of the beneficiaries.

But let us look at some of the consequences of holding that by "lineal descendants" the grantor meant the issue of the beneficiaries whether dead or alive.   As we have seen, the purpose of the deed was to provide for the permanent comfort and support of the grantor's sister-in-law and her four children, three daughters and one son.   The deed was made in 1883.   The daughters as the deed shows were all married—from which it follows that Mrs. Hamilton must have been a lady well advanced in years and her daughters being married must have been persons of mature years.   If the construction of the deed be that contended for by plaintiffs in error the result must be that instead of a permanent benefaction, in their old age and when they would most likely be in need of a support, they are entirely stripped of it.   Is it conceivable that any man in his

sober senses should desire to support his relatives in comparative affluence for a part of their lives and to deprive them of such support when by reason of advancing years their necessities would be greater? It is the more remarkable, that this result should depend upon a contingency of the death of all the trustees—a contingency having no relation to the status of any of the beneficiaries but merely as to the status of those to whom was confided the execution of the trust. Why this marked change in the objects of his bounty, merely by reason of the death of all the trustees? Again while it appears that the trustees lived many years, it was in the range of possibility and not wholly improbable that they might have died within a year from the execution of the deed; in which event, under the contention of plaintiffs in error, the benefaction of the grantor towards the beneficiaries named would have ceased. Can it be possible that the grantor should have intended such a result?

We also think that the final paragraph of the deed, which provides, that the beneficiaries of the deed should "at no time demand, take or hold any other interest or estate in my property, real, personal or mixed within the State of Texas than that herein granted" is not without significance. It indicates that the grantor thought that in providing for them for life and in also providing that the corpus of the fund go to their lineal descendants, he had carved out for them all that he thought they were entitled to out of his estate. Would he have made such provision had he contemplated that before their death they might be deprived of all benefits under the deed?

We attach no importance to the habendum clause in the deed. They were mere trustees and their powers and duties necessarily ceased, when they departed this life. So with the sixth paragraph. The will that is therein provided for is to be executed "in accordance with section fifth of this deed." If section fifth was only to take effect, upon the death of all the beneficiaries and all the trustees, the will was not to be executed until both contingencies had happened.

Our conclusion is that the intention of the testator as derived from all the provisions of the deed was that the words "lineal descendants" should be taken in their technical sense, and that the contingencies upon which the corpus of the fund should devolve upon the issue of the beneficiaries, were, 1st, that they should all be dead, and 2nd, that the trustees should all have departed this life.

We think the question of *res adjudicata* presented by the second assignment of error was correctly disposed of by the Court of Civil Appeals.

We are not satisfied, that all that was testified to by Mrs. Hamilton was admissible; but if error, we deem it harmless. The face of the deed in the light of testimony to which no objection was made demands the construction placed upon it by us, and needs no support from that of the witness to which objection was made.

The judgment of the Court of Civil Appeals and that of the District Court are affirmed.

*Affirmed.*