**BENSKIN et al. v. BARKSDALE.***
(No. 349–3086.)

(Commission of Appeals of Texas, Section B. Jan. 10, 1923.)

**1. Landlord and tenant ⚖️66(2) — Tenant's possession becomes adverse only by disclaimer of landlord's title.**

A tenant cannot set up an adverse claim which may operate to bar the landlord's title by adverse possession under the statute of limitations, until he shall have expressly disaffirmed such title of his landlord and given him full notice that he claims to hold adversely thereto.

**2. Landlord and tenant ⚖️66(3)—Mere holding over is not disclaimer of landlord's title.**

A mere holding over after the expiration of the term is not evidence of a tenant's adverse possession, for the tenant in such case becomes

either a trespasser or a tenant of the landlord's option; and one succeeding to the possession of a tenant holding over, whether by purchase or inheritance, is equally disqualified with the original tenant to set up his possession as adverse to the landlord's right.

**3. Landlord and tenant ⚖️66(2)—Subtenant's possession is not adverse prior to disclaimer of landlord's title.**

Where a tenant leased to another, such subtenant's possession was the landlord's possession until his adverse possession was made out, not by inference, but by clear and positive proof of a claim on his part of adverse possession and acquiescence therein on the part of the landlord after knowing the same.

**4. Landlord and tenant ⚖️66(2)—Whether subtenant disclaimed landlord's title to the latter's knowledge held for jury.**

In trespass to try title, *held* that, the evidence being conflicting on the issues of whether defendant subtenant's possession was with assertion of title adverse to the landlord, and whether such claim was brought home to the landlord, such issues were for the jury.

**5. Deeds ⚖️93—Intention prevails.**

In all contracts, including deeds, the intent of the parties, when it can be obtained from the instrument, will prevail, unless counteracted by some rule of law, and when the intention of the parties can be plainly ascertained arbitrary rules are not to be resorted to.

**6. Deeds ⚖️95—Effect must be given to all parts.**

The intention of the parties is to be ascertained by considering all the provisions of the deed, and the deed should be so construed, if possible, as to give effect to all its parts.

**7. Deeds ⚖️97—First part of deed prevails where clear.**

Wherever the first part of a deed is definite and certain and irreconcilable with later parts, the first part must prevail, but this rule is resorted to only where there is an irreconcilable conflict between the different parts of the instrument.

**8. Deeds ⚖️25—Deed held not a quitclaim.**

A deed by a lessor, wherein the granting clause conveyed all his right, title, and interest in the premises, but the habendum clause was to the grantee, "his heirs and assigns forever," and no mention was made of the leasehold interest in the deed, either directly or by reference to any other document, *held* not to show an intent merely to quitclaim the leasehold interest of grantor.

**9. Evidence ⚖️461(2)—Parol evidence not admissible to alter unambiguous deed.**

Where the terms of a deed are plain and intelligible, the intent cannot be altered by evidence of extraneous circumstances.

**10. Adverse possession ⚖️71(1)—Deed of fee by lessee held sufficient to support adverse possession.**

Under article 5674 a deed of the fee by lessee *held* sufficient to support adverse possession.

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied February 7, 1923.

**11. Election of remedies ⚖️⇒7(1)—Suit on vendor's lien note held not to estop owner to bring trespass to try title.**

Where purchaser of land bought from her vendor a vendor's lien note, given by a later purchaser of the same land from the vendor, and brought suit on the note, such suit, in which there was no recovery, *held* not to estop her from later suing the subsequent purchaser in action of trespass to try title.

**12. Estoppel ⚖️⇒52—Fraud and injury held essential elements.**

Fraud, actual or imputed, in the conduct of the party complained of, and injury from the fraud to party complaining, are essential elements in every equitable estoppel.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Trespass to try title by K. H. Barksdale against J. M. Benskin and others. Judgment for defendants was by the Court of Civil Appeals reversed and rendered, 194 S. W. 402, and defendants bring error. Reversed and remanded.

Clarence Martin, of San Antonio, Jno. W. Hill, of Breckenridge, and Chas. L. Black, of Austin, for plaintiffs in error.

J. E. Friestman, of Rock Springs, and Lipscomb & Lipscomb and W. A. Morris, all of San Antonio, for defendant in error.

HAMILTON, J. On June 20, 1903, J. J. Ellis for a good and sufficient consideration conveyed, by general warranty deed, to Miss K. H. Barksdale, among other tracts of land, the S. W. ⅞ of survey No. 40 and the E. ½ of survey No. 44 in Edwards county, in consideration of $4,500 cash. This deed was filed for record in September, 1903. Miss Barksdale at once leased the land to Ellis, grantor, for and in consideration of his paying the taxes and interest, as these became due, to the state. No time for the duration of the lease was agreed upon. Soon after making the lease, Miss Barksdale became a nonresident of Texas. Ellis continued to use the land and to comply with the leasehold agreement, directly and through his subtenants, until December 3, 1906. On that date, Ellis executed a deed conveying to J. M. Benskin, along with several other tracts, the above-described land. That deed was recorded February 7, 1907, and was as follows:

"The State of Texas, County of Edwards:

"Know all men by these presents: That I, J. J. Ellis, of the county of Edwards and state of Texas, for and in consideration of the sum of twenty-five ($2,500.00) hundred cash to me in hand paid by J. M. Benskin of the county of Edwards and state of Texas, the receipt of which is hereby acknowledged, together with the execution and delivery to me by the said J. M. Benskin of his certain promissory note of even date with his instrument for the sum of fifteen hundred ($1,500.00) dollars drawing eight per cent. (8%) interest, payable to the order of J. J. Ellis at Rock Springs, Texas, on the 1st day of May, 1907, which said note is secured by a vendor's lien on the premises hereafter conveyed and described, and which said note is payable only upon the condition that the said J. J. Ellis makes to the said J. M. Benskin a warranty deed to section 53, below, with clear title thereto, do by these presents, bargain, sell, release, and forever quitclaim, unto the said J. M. Benskin his heirs and assigns all of my right, title and interest in and to that certain tracts and parcels of land lying and being situated in Edwards county, Texas, described as follows, to wit:

| Abst. | Sur. | Cert. | Blk. | Original Grantee | Acres |
|---|---|---|---|---|---|
| | 39 | 1740 | 10 | G., H. & S. A. Ry. Co. | 581 |
| | 53 | 68 | 2 | Brooks & Burleson. | 640 |
| | 45 | 1743 | 10 | G., H. & S. A. Ry. Co. | 640 |
| | 43 | 1742 | 10 | G., H. & S. A. Ry. Co. | 640 |
| | 61 | 1801 | 10 | G., H. & S. A. Ry. Co. | 640 |
| | 38 | 1739 | 10 | G., H. & S. A. Ry. Co. | 474¼ |
| S. W. ⅞ | 40 | 1740 | 10 | G., H. & S. A. Ry. Co. | 527⅝ |
| | 42 | 1741 | 10 | G., H. & S. A. Ry. Co. | 640 |
| | 44 | 1742 | 10 | G., H. & S. A. Ry. Co. | 640 |

"To have and to hold the said premises together with all and singular the rights, privileges and appurtenances thereto in any manner belonging, unto the said J. M. Benskin, his heirs and assigns, forever, so that neither I, the said J. J. Ellis nor my heirs, nor any person or persons claiming under me, shall, at any time hereafter, have, claim or demand any right or title to the aforesaid premises or appurtenances, or any part thereof. But it is expressly agreed, understood and stipulated that a vendor's lien is retained on the aforesaid described premises until the aforementioned and described note and all interest thereon has been fully paid when this deed shall become absolute as a quitclaim deed.

"Witness my hand at Rock Springs, Texas, this the 3d day of December, 1906.

"J. J. Ellis."

Benskin had been in possession of the land about a year before he received the deed above set out. He subleased it from J. J. Ellis, and his possession was by virtue of that lease. Ellis died in the latter part of 1907. On June 25, 1907, Benskin sold a part of the land to A. Benton, giving bond for title. On September 8, 1915, Benton sold part of that part to W. C. Strackbein, giving bond for title. Neither Benton nor Strackbein ever had a deed to any of the land, and neither ever paid anything on it except taxes and interest as Ellis had done. On August 15, 1913, Benskin sold and conveyed by deed, together with other land, a part of the land in controversy, amounting altogether to 2,683 acres, to E. F. Boyce. He paid $1,000 in cash "sixty-six hundred and something" in notes for the whole 2,683 acres. He never paid anything on the notes, but paid interest and taxes to the state.

On November 19, 1915, Miss Barksdale filed this suit in trespass to try title against J. M. Benskin, E. F. Boyce, A. Benton, and W. C. Strackbein for recovery of the land

conveyed to her by J. J. Ellis above described. Defendants answered by plea of "not guilty," by pleas of the statutes of limitation of three and five years, plea of valuable improvement made in good faith, and specially pleaded title in J. M. Benskin by virtue of the deed of J. J. Ellis above set out.

Upon the conclusion of the testimony, the trial court instructed the jury to return a verdict for defendants. Upon this verdict the court rendered judgment in their behalf. Plaintiff appealed, and the Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment for appellant. 194 S. W. 402. Appellees then sought and obtained a writ of error.

In the opinion of the Court of Civil Appeals, it is stated that—

"Benskin complied with all the requirements prescribed by article 56744, as essential to acquire land by the five-year limitation."

To that proposition, as a conclusion of law, from the findings of fact stated by the Court of Civil Appeals, amply supported as they are by the evidence, we cannot agree.

[1-4] It is a well-settled general rule of law that a tenant cannot dispute the title of his landlord by setting up a title either in himself or in a third person during the existence of his lease or tenancy. The principle of estoppel applies and operates with full force to prevent the tenant from violating the contract by which he continues to claim and hold the possession. But the tenant's estoppel must be regarded in two aspects, one in its connection with the question of title to the premises in a real action, such as this one, the other as affecting the tenant's liability in an action for the recovery of rent upon an actual or implied contract. In the last case, in an action for the recovery of rent, the rule that the tenant will not, as a matter of law, be permitted to deny his landlord's title until possession of the premises is surrendered is applicable. This is true because a party cannot, of his own will, put an end to a contract under which he continues to receive that for which he promised to make compensation. In the second case, if the tenant of a lessor give him express notice that he will no longer hold under him, he is regarded as thereby committing an actual disseizin, and the statutes of limitation upon an adverse possession begins to run from the time of such notice. Unless, however, the tenant, by a formal act, disclaim and renounce the title of the landlord, his possession can never become adverse. Buswell's Limitation and Adverse Possession, § 304. He cannot set up an adverse claim which may operate to bar the landlord's title by adverse possession under the statute of limitations, until he shall have expressly disaffirmed such title of his landlord and given him full notice that he claims to hold adversely thereto. A mere holding over after the expiration of the term is not evidence of an adverse possession. The tenant in such case becomes either a trespasser or a tenant at the option of the landlord. One succeeding to the possession of a tenant holding over, whether by purchase or inheritance, is equally disqualified with the original tenant to set up his possession as adverse to the landlord's right. Word v. Drouthett, 44 Tex. 365; Mattfield v. Huntington, 17 Tex. Civ. App. 716, 43 S. W. 53 (writ of error denied); Buford v. Wasson, 49 Tex. Civ. App. 454, 109 S. W. 275 (writ of error denied); Flanagan v. Pierson, 61 Tex. 302; Oury v. Saunders, 77 Tex. 278, 13 S. W. 1030; Carter v. La Grange, 60 Tex. 636; Cobb v. Robertson, 99 Tex. 138, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609. Ellis was the tenant of Barksdale until he leased to Benskin; Benskin became then her tenant. His possession was her possession until his adverse possession is made out, not by inference, but by clear and positive proof of a claim on his part of adverse possession, and an acquiescence therein on the part of Miss Barksdale after knowing the same. Buswell's Limitations and Adverse Possession, § 309; Bedford v. Rayner Cattle Co., 13 Tex. Civ. App. 618, 35 S. W. 931. No such proof is shown in the record of this case. Benskin did not testify that he ever claimed the land adversely to Miss Barksdale. He merely testified that he had had peaceable and undisturbed possession of the land. No testimony that Barksdale ever had notice of any adverse claim to the land appears in the statement of facts, except the testimony of Miss Barksdale on that matter, as follows:

"Mr. Ellis, a short time before he died, told me that he had sold the land to Mr. Benskin, and gave me a note. The note was for $1,500. The note was given in part payment for this land. The same land sued for here under this deed. I also brought suit against Benskin on that $1,500 note on the same land. * * * I said that J. J. Ellis told me that he had sold this land—that was a mistake on my part. I didn't mean that it was that land, my land at all. I do not mean that he told me he had sold my land."

This is all the testimony we find in the record concerning any notice to Barksdale of the sale of the land. There is not any evidence whatever that Benskin, who leased the land from Ellis "about a year" before the date of the deed from Ellis to him, ever gave her any notice that he was claiming the land in any way other than as authorized by the lease under which he entered. Benskin paid the interest and taxes, and used the land just as Ellis agreed to do under the original lease, and there was nothing to bring home to her notice of his claim of adverse possession except the facts testified to by her as set out above.

This testimony is contradictory, and could properly have been resolved by the jury only. The fact of possession, and the intent and

purpose with which it is taken and held, and the facts as to disclaimer, by the tenant, of the landlord's title and as to his refusal longer to hold under the landlord and facts as to his assertion of his own claim of the land and of express notice of this claim and of its being brought home to the landlord are questions for the jury. The trial court cannot substitute itself in place of the jury and pass on such facts itself, where there is any contradiction in the testimony either of different witnesses or of the same witness as to such facts. What character of facts are requisite or sufficient to entitle a party setting up adverse possession to the protection of the statute is a question of law. Word v. Drouthett, 44 Tex. 365.

Counsel for defendants in error ably maintain that the deed set out above is only a quitclaim deed, and purports only to quitclaim such right, title, and interest as Ellis at the time had—a leasehold interest.

[5, 6] In all contracts, including deeds, the intent of the parties, when it can be obtained from the instrument, will prevail, unless counteracted by some rule of law. Vineyard v. O'Connor, 90 Tex. 59, 36 S. W. 424; Pierson v. Sanger Bros., 93 Tex. 160, 53 S. W. 1012; Stone v. Sledge, 87 Tex. 49, 26 S. W. 1068, 47 Am. St. Rep. 65. When the intention of the parties can be plainly ascertained arbitrary rules are not to be resorted to. Cravens v. White, 73 Tex. 577, 11 S. W. 543, 15 Am. St. Rep. 803; McCartney v. McCartney, 93 Tex. 359, 55 S. W. 310; Parrish v. Mills, 101 Tex. 276, 106 S. W. 882. The rule is that the intention of the parties is to be ascertained by considering all the provisions of the deed, and that in doing so, the deed shall be construed, if possible, so as to give effect to all its parts. Urquhart v. Burleson, 6 Tex. 502; Pugh v. Mays, 60 Tex. 191; Smith v. Brown, 66 Tex. 543, 1 S. W. 573; Risien v. Brown, 73 Tex. 135, 10 S. W. 661; Cartwright v. Trueblood 90 Tex. 535, 39 S. W. 930.

The granting clause in the above deed is indefinite and uncertain as to the extent of the estate granted in the lands described. The estate intended to be granted, in so far as the intent may be gathered from the words of that clause, might vary from nothing to the full fee. Therefore that clause, considered above, is flexible, pliant, and adaptable, and, in arriving at the intent of the parties, may be made to conform to any other provision of the deed, less fixed, certain, and adaptable as to quantity of estate intended to be conveyed.

[7, 8] Wherever the first part of a deed is definite and certain and irreconcilable with later parts, the first part must prevail. Wallace v. Crow (Tex. Sup.) 1 S. W. 372; Witt v. Harlan, 66 Tex. 660, 2 S. W. 41. But this rule is resorted to only where there is an irreconcilable conflict between the different parts of the instrument. The habendum

of the above deed is not so flexible, pliant, and adaptable in its revelation of the extent of estate, in the land, intended by the parties to be passed. By its terms Benskin, his heirs and assigns, are to have and to hold the premises, together with all and singular the rights, privileges, and appurtenances thereto in any manner belonging, forever.

[9] We do not think the language of the instrument shows an intent merely to quitclaim the leasehold interest of Ellis. It demands no resort to external evidence for interpretation, and independently of other evidence there is no suggestion, in the deed, of a leasehold interest either directly or by reference to any other document. Where the terms of a deed are plain and intelligible, the intent cannot be altered by evidence of extraneous circumstances. 2 Devlin on Deeds, § 840.

Defendants in error stress the remaining portion of the habendum clause:

"So that neither I, the said J. J. Ellis, nor my heirs, nor any person or persons claiming under me, shall, at any time hereafter, have, claim or demand any right or title to the aforesaid premises or appurtenances, or any part thereof,"

as the features of the deed distinguishing it from the deed in Garrett v. Christopher, 74 Tex. 453, 12 S. W. 67, 15 Am. St. Rep. 850, in which the grantee was to hold the land against the world. We do not think the clause excluding Benskin and his heirs and all persons claiming under him from ever claiming any right or title to the land aids defendants in error in their contention that the deed is only a quitclaim as to Ellis' leasehold interest.

[10] The deed is sufficient to support adverse possession and to set in motion the five-year statute of limitation. Parker v. Newberry, 83 Tex. 428, 18 S. W. 815; McDonough v. Jefferson County, 79 Tex. 535, 15 S. W. 490; Safford v. Stubbs, 117 Ill. 389, 7 N. E. 653. The statute, in so far as a deed is concerned, demands only that the person having peaceable and adverse possession of real estate be "claiming under a deed or deeds duly registered." Rev. St. art. 5674. Of course such deed must describe the land. We think the instrument set out above falls within the class designated as deeds.

[11] The $1,500 note described in the deed above was sold to defendant in error by J. J. Ellis. She brought suit on it against Benskin. In her petition in that suit she alleged that the lands described in the deed above were conveyed by J. J. Ellis to J. M. Benskin by deed, in consideration, among other things of the note, and that, in the deed, a lien was reserved thereon to secure payment of the note, and for foreclosure of the lien.

Benskin answered, alleging, among other things, that the "$1,500 note was not to be paid unless the said Ellis should give him

a warranty deed and clear the title to survey No. 53," that no such deed was ever made and delivered to him, and that the title to section 53 was "bad and defective," setting out the defects. Judgment was rendered denying recovery on the note.

Plaintiffs in error insist that, by that suit, defendant in error ratified, approved, and adopted the act of Ellis in conveying the land to Benskin, and also showed that she had elected to pursue one legal remedy, a foreclosure on the land to collect the debt, and was not thereafter entitled to pursue the remedy in trespass to try title. There was no allegation or proof that Ellis was Miss Barksdale's agent in the sale of the land, and no question of undisclosed principal is raised by the record. If defendant in error had collected the note, or if she had obtained judgment on it with a foreclosure of the lien on the land, she would have been estopped from setting up further claim. But, as the validity of the note and of the lien to secure it were conditioned upon acts of Ellis that were never performed by him, they were each void. We do not think the suit on such void claim would estop defendant in error from bringing the suit in trespass to try title. Especially is this true in view of her uncontradicted testimony concerning knowledge of the facts in and the manner of bringing the suit on the note. On these matters she testified:

"Regarding the evidence on the question of a note sued on here for me several years ago, I remember a suit against Mr. Benskin, in which Mr. Hill represented me, and you [Mr. Morriss] represented Mr. Benskin. I never had anything to do with it. I never had anything to do with employing anybody. I was in New Mexico at the time. I came to the trial. Whit Ellis wrote me that Mr. Benskin refused to pay the note, and that he had sued him and employed a lawyer to defend the case, and for me to come on as soon as I could. That was some time in November, the latter part of November. I left New Mexico about the 15th, and come here and got here about the 1st of December. I was only here once, and they taken my evidence. I never was in the courtroom but one time, when I came to testify. I left and went down town. I stayed here till after Christmas. I left the courtroom. I did not discuss the matter with Whit [G. W. Ellis] nor Mr. Hill. Mr. Hill never did talk to me about it. He never came to see me but one time; that was at Mrs. Steibers. I was living with her at the time. He came to the door, and asked me how much Mr. Ellis owed me. I told him. He said a few remarks, and that is all he ever said to me one way or the other. I did not know that note purported to be a vendor's lien on my land which is involved in this suit, which J. J. Ellis conveyed to me. I never filed suit nor authorized any other person to act for me, in filing suit to foreclose a lien on the lands which J. J. Ellis had deeded to me. I did not know that anybody had filed a suit for me to foreclose a lien, claiming I held a note with a vendor's lien on the land Ellis had sold to me. I said that J. J. Ellis told me that he

had sold this land—that was a mistake on my part. I didn't mean that it was that land, my land at all. I do not mean that he told me he had sold my land. * * * I never had any knowledge at any time of the fact that the note was a vendor's lien, or purported to be a vendor's lien on any land J. J. Ellis had sold to me. When Judge Ellis gave me the note he did not tell me what lands it was covered by. At the time I left the note with Ellis I did not know what surveys it covered. I never did know. I did not know my land before suit was filed by survey number or section. I have had no experience in business matters. Judge Ellis had attended to that for me as long as he lived. He has attended to my business since 1881. Prior to that time I had no experience in business matters. I have never conducted business transactions for myself; I have always depended on Judge Ellis to do that; making sales of my property in the past he handled it all. Judge Ellis never had any authority from me at any time to sell my land. Judge Ellis never had authority to sell my land to Mr. Benskin or any other person. Judge Ellis never told me that he had sold my land. The first time that I learned that my land, which he conveyed to me, had been sold to somebody else, or claimed by somebody else, was not until I came back here last July. I think I found it out in September. I came here in September or October. That was the first I heard of it. I came back to Sonora in July."

Whit Ellis and Mr. Hill each testified without contradiction that he did not know that Miss Barksdale owned any of the land on which the lien to secure the $1,500 note was retained until after the termination of that suit. If it be claimed that she was charged by the record with knowledge that the lands on which she sought to foreclose the lien was her own land, then likewise Benskin was charged with notice in the same manner.

"Allegations or admissions in pleadings in a former action or proceeding will ordinarily estop the party making them from denying their truth in a subsequent action or proceeding in which he is a party to the prejudice of his opponent where the usual elements of estoppel by conduct are present.

"In order to estop a party by allegations or admissions in pleadings in a former action or proceeding it is essential that the issues involved should be the same, and that the allegations or admissions must have been material to the matters adjudicated in the former action. Also there must have been a determination of the prior action, or at least the allegations or admissions must have been acted on by the court in which the pleadings were filed or by the parties claiming the estoppel. There can be no estoppel where the admissions or statements were made through mistake, or without full knowledge of the facts, especially where the facts were within the knowledge of the adverse party; or where there is no actual inconsistency between the averments of the pleadings in the former action and the position taken in the subsequent action. Also the party claiming the estoppel must have been ignorant of the real facts, and, in reliance on the statements or admissions, he must have changed his position

and sustained prejudice by reason thereof." 21 C. J. pp. 1233, 1234, pp. 238, 239, and authorities there cited.

[12] Fraud, actual or imputed, in the conduct of the party complained of, and injury from the fraud to party complaining, are essential elements in every equitable estoppel. Gulf Trust Co. v. Hartley et al., 20 Tex. Civ. App. 180, 49 S. W. 902 (writ of error refused). None is shown in this case.

No question concerning improvements was presented to the Court of Civil Appeals, and none are raised here.

We recommend that the judgments of the district court and of the Court of Civil Appeals be reversed, and that the cause be remanded for another trial, not inconsistent with the views herein expressed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.