James H. REILLY et ux., Appellants,

v.

Mary S. HUFF et al., Appellees.

No. 13568.

Court of Civil Appeals of Texas.

San Antonio.

April 27, 1960.

K. D. Hall, Refugio, for appellants.

Huson & Bissett, Refugio, for appellees.

BARROW, Justice.

This is a suit brought to construe the will of Charles P. Fox, deceased. All persons interested in the subject matter of this suit were made parties, including all living minors, who were represented by a guardian ad litem, and all unborn, uncertain and indeterminable descendants of Julia E. Shay, deceased, were made parties by virtual representation and were represented by a guardian ad litem.

The paragraphs of the will of said Charles P. Fox sought to be construed are as follows:

"4th. In order to provide an adequate fund for the maintenance of my beloved sisters, Miss M. E. Fox and Miss F. M. Fox, during their old age, I give and bequeath to Miss M. E. Fox and Miss F. M. Fox, jointly, all the property, real, personal and mixed, of which I may be possessed at the time of my death, subject to all my just debts and the legacies provided for in paragraphs 2 and 3 of this will.

"I further direct that if only one of my said sisters should be living at the time of my death, then in that event the survivor shall receive all of my property, real, personal and mixed, possessed by me at the time of my death, subject to the payments of all my debts and the legacies embraced in paragraphs 2 and 3 of this will.

"5th. I direct and it is my will that upon the death of M. E. Fox and F. M. Fox, legatees (if either should survive me), as provided in paragraph 4 of this will, that all of my estate remaining at that time shall be divided into (4) four equal shares and distributed as follows: to-wit: Mrs. Julia E. Shay, a feme sole, and her descendants, one share, D. S. Fox, one share, the sons of W. J. Fox, deceased, one share, Mrs. Kathleen Heard, wife of Wilson Heard, and Celeste Low, wife of John F. Low, one share."

The case was tried before the court without a jury and judgment was entered on August 3, 1959, declaring that the re-

siduary estate of Charles P. Fox passed at his death, subject to the life estates of his sisters, Frances Margaret Fox and Mary Ellen Fox, in four equal shares, to those persons named in paragraph 5th of his will; which said shares were then and there each vested, indefeasible interests as of the date of death of said testator, Charles P. Fox, and free of any interest or claim of any other person whomsoever; and that the share devised to "Julia E. Shay, a feme sole, and her descendants," and which was owned by Julia E. Shay in indefeasible fee simple title, subject only to said life estates, passed at her death to the devisees named in her will, viz., her four children, Mary S. Huff, Ethel Augustina Shay (Sister Mary Regis), Julia S. Jecker, appellees herein, and Joseph D. Shay, now deceased, in equal shares; and that pursuant to the will of said Joseph D. Shay, deceased, his interest in said share passed to two of his children, Lawrence E. Shay and Wallace W. Shay, also appellees herein; and that, said life estates now having terminated, said share devised to "Julia E. Shay, a feme sole, and her descendants," is now owned by the plaintiffs to this suit, viz.: Mary S. Huff, Ethel Augustina Shay (Sister Mary Regis), Julia S. Jecker, and Lawrence E. Shay and Wallace W. Shay, who are appellees here. From that judgment Mary Agnes Reilly, a child of Joseph D. Shay, deceased, joined by her husband, James H. Reilly, filed notice of appeal and requested findings of fact and conclusions of law of the trial court. No exceptions or objections to said findings and conclusions were made or filed by any of the parties to the suit.

The next of kin of Charles P. Fox, the testator, at the time of making his will on October 18, 1934, were two unmarried sisters, Mary Ellen Fox, about 69 years of age, and Frances Margaret Fox, about 60 years of age, one sister Julia E. Shay, a widow, about 71 years of age, a brother, Dan S. Fox, about 65 years of age, two granddaughters, Kathleen Heard and Celeste Low, the daughters of a deceased

sister, Catherine Fox Leisering, and two grandsons, W. E. Fox and Jules Fox, sons of a deceased brother, William J. Fox.

Charles P. Fox, the testator, died February 7, 1937, his sister Julia E. Shay died testate November 17, 1951, and her estate passed under her will to her four children, Joseph D. Shay, Mary S. Huff, Ethel Augustina Shay and Julia S. Jecker. Joseph D. Shay died testate September 9, 1954; Frances Margaret Fox died testate April 10, 1952, and Mary Ellen Fox died testate December 2, 1957.

Appellant, Mary Agnes Shay Reilly, is a surviving daughter of Joseph D. Shay, deceased, but is not a beneficiary under his will.

On the date of the death of the testator, Charles P. Fox, the descendants of Julia E. Shay were as follows: four children, fourteen grandchildren, and no great grandchildren. On the date of her death, Julia E. Shay's descendants consisted of four children, thirteen grandchildren and sixteen great grandchildren. On the date of the trial, her descendants consisted of three children, thirteen grandchildren, and thirty-three great grandchildren.

The record shows that the testator was a man of considerable business ability, and experienced in the management of estates of deceased persons and the guardianship of the estates of minors. That his will was drawn by an attorney. From these facts, we may presume that the testator knew and understood the meaning, purpose and significance of his act in making the will, and that the will as drawn expressed in legal language his purpose and intention.

The only part of the will that is in controversy in this suit is the remainder devised to Julia E. Shay and her descendants, under the provisions of the "5th" paragraph of the will.

By their first point appellants contend that the court erred in holding that the will of Charles P. Fox at the time of his death devised a fee simple estate to

Julia E. Shay and her descendants, because such devise was a contingent devise and did not vest until the death of the last surviving life tenant, Mary Ellen Fox, on December 2, 1957. The contention is based on the fact that the testator gave the life tenants full power to sell and dispose of all or any part of the estate, and appellants argue that the remainder is contingent upon whether or not any estate remains upon the termination of the life estate. We overrule that contention. The will involved contains no general residuary clause. It vests the estate in the four remaindermen as provided in paragraph "5th".

▮▮ It is well settled in this State that where a will gives to the life tenant full power of sale and disposition of the estate, the fact that the power may be exercised by the life tenant does not prevent the vesting of the remainder at the time of the testator's death, if at that time there is a person in being who would have a right to possession upon the termination of the intermediate estate. The character of a remainder as vested is not affected by an uncertainty as to the question of the quantum which will be received by the remainderman when he becomes entitled to possession. In other words, a remainder is not made contingent by uncertainty as to the amount of the estate remaining undisposed of at the expiration of the life estate, but by uncertainty as to the persons who are to take. The uncertainty which distinguishes a contingent remainder is the uncertainty of the right and not of the actual enjoyment. Chadwick v. Bristow, 146 Tex. 481, 208 S.W.2d 888; Federal Land Bank of Houston v. Little, 130 Tex. 173, 107 S.W.2d 374; Caples v. Ward, 107 Tex. 341, 179 S.W.2d 856; Bufford v. Holliman, 10 Tex. 560; Gibbs v. Barkley, Tex.Com. App., 242 S.W. 462; State v. Waddill, Tex. Civ.App., 286 S.W.2d 680; Pinkston v. Pinkston, Tex.Civ.App., 254 S.W.2d 196; Medlin v. Medlin, Tex.Civ.App., 203 S.W. 2d 635; Giraud v. Crockett, Tex.Civ.App., 142 S.W.2d 243.

The often cited and followed case of Caples v. Ward, supra, states the rule in clear language as follows [107 Tex. 341, 179 S.W. 858.]:

"Though the test of a vested remainder is the existence of an ascertained person having an immediate right to the possession on its becoming vacant by the termination of the intervening estate, this does not imply any certainty as to the quantity and value of the remainderman's interest. The remainder is not made contingent by uncertainty as to the amount of the estate remaining undisposed of at the expiration of the life estate, but by uncertainty as to the persons who are to take. Heilman v. Heilman, 129 Ind. 59, 28 N.E. 310. With certainty existing as to the person who is to take, with that person named in the will and in being at the time of the testator's death, and with no condition imposed upon his right to the possession except the expiration of the life estate through the death of the life tenant, as is the case here, the sale of the property by the life tenant could not be said to prevent the vesting of the estate of the remainderman at the death of the testator. The remainder vests, subject to the power of sale in the life tenant.

"Whether there will be any of the estate remaining under the exercise of the power presents a contingency, it is true. But under the will the vesting of the interest of Joseph Caples, and the other remaindermen, is not made dependent upon that contingency. It is not a condition precedent to the vesting of his interest, but only a condition subsequent, which may affect the amount of his interest, or defeat its enjoyment. An estate limited upon a contingency, to which the effect of a condition subsequent only is given, vests at once, subject to be divested upon the happening of the contingency."

It is evident that the remainder devised to Julia E. Shay and her descendants vested upon the death of the testator and not at the termination of the life estates.

By their second point, appellants contend that the trial court erred in holding that the word descendants meant the bodily heirs of Julia E. Shay.

So far as we have been able to ascertain, this is a case of first impression involving a devise to a person "and her descendants," as distinguished from a devise to "the descendants of" a person, or to a person "or his descendants."

Appellants' contention in this regard is bottomed on the erroneous premise that the devise to Julia E. Shay and her descendants did not vest until the death of the last surviving life tenant, and that Julia E. Shay having pre-deceased such tenant, the devise vested in her descendants, even in the remotest degree to the end of time, and that it vested in them as a class per capita.

The decision of the question involves the meaning of the word *descendants* as used by the testator. The word "descendant", according to its lexicograph and legal meaning, designates the issue of a deceased person, and does not describe the issue of a living person, the word being correlative of the word "ancestor." A living person can have no descendants. 26A C.J.S. p. 504; 44 Tex.Jur. 800, § 233; Mitchell v. Mitchell, 151 Tex. 1, 244 S.W. 2d 803. But in a popular sense the word is sometimes used to denote the issue of a living person. Parrish v. Mills, 101 Tex. 276, 106 S.W. 882; Hillen v. Iselin, 144 N.Y. 365, 39 N.E. 368. If there is any ambiguity in the use of the word "descendants" the entire instrument, together with the surrounding circumstances, should be considered in order to ascertain the intent of the testator. In this case, after providing for a life estate for his two unmarried sisters, testator provided for the division of his estate into four equal shares, one of which he devised to his living brother, one

to the two daughters of his deceased sister, one to the two sons of his deceased brother, and one to his seventy-one year old sister and her descendants. The record shows that the testator was on friendly terms with his sister Mrs. Shay, and no reason appears in the entire record why he should have or would have discriminated against her, or made any distinction in her case. The record shows a distinct plan and scheme for the disposition of the testator's estate; that is, that he intended an equal division of the remainder of his estate between his remaining brothers and sisters, or their descendants in case of their death, two of whom were already deceased. The only logical reason for the addition of the words "and her descendants" in the case of Mrs. Shay was that on account of her advanced age she might pre-decease the testator, and in that event to provide for succession and substitution by her bodily heirs, as was done in the case of his deceased brother and sister. On the other hand, to construe the devise as being one to Julia E. Shay and her descendants per capita, as contended by appellants, would mean that she would take one-nineteenth, of the remainder, rather than one fourth of the estate; the other eighteen shares going to her four children and fourteen grandchildren, even if it be confined to those who were in esse at the time of testator's death.

We think the opinion in Parrish v. Mills, supra, while not in point on the facts, is controlling insofar as it lays down the rule for determining the meaning of the word "descendants" when used in a will such as is here involved. The testator was a man of considerable business experience and familiar with the management of estates of deceased persons as well as minors. His will was prepared by an attorney, who must be presumed to know the lexicographic and legal meaning of such words, and we think it is clear that the words used must be construed to have such meaning rather than the popular meaning. Applying such meaning to the words, it was the intention of the testator that one-fourth of the remainder

of his estate go to Julia E. Shay in fee simple, for, according to the lexicographic and legal meaning of the word, Julia E. Shay had no descendants either at the time he made the will or at the time of testator's death, because she was then living. We think the will in that respect is clear and unambiguous. In order to give any effect to the expression "and her descendants", the testator must have intended that such class of persons take in event Julia E. Shay pre-deceased the testator.

Another reason why the term "and her descendants" cannot be construed as contended by appellants is that to so construe the words would mean that Mrs. Shay and her descendants, even in the remotest degree, would take as co-tenants. Such construction would violate the rule against perpetuities. Art. 1, § 26, Constitution of Texas, Vernon's Ann.St.; Henderson v. Moore, 144 Tex. 398, 190 S.W.2d 800. This construction would make the devise void.

We are of the opinion that the will devises a fee simple estate to Julia E. Shay. We think, under the common law the language used would create an estate tail. An estate tail is an estate of inheritance limited not to the donor's heirs generally, but to the heirs of his body begotten. Any language denoting an intention on the part of the testator to pass to the devisee an estate of inheritance descendable to his, or some of his lineal but not collateral, heirs has been usually regarded as a sufficient devise in fee tail. Thompson on Wills, 2d Ed., pp. 425–427, § 348. The most often used language to create an estate tail is a limitation to one and the heirs of his body, but it has been held that an estate tail may be created by any language showing an intention to create an estate of inheritance descendable only to lineal heirs. 96 C.J.S. Wills § 862, p. 290. The common law rule has been well stated in 3 Page on Wills, Lifetime Edition, 322–323, § 1095, as follows:

"A gift to A and his 'issue,' or words of similar import, passes an estate-tail, where the context does not show an effective intent to give A a life estate only and where 'issue' is a word of limitation. A gift to A and his descendants creates a fee-tail.

"If testator intends to create an estate in one and such of his heirs as are his lineal descendants, excluding collateral heirs, the estate is a fee tail whether or not testator intended to create such estate."

Thus it is apparent that under the common law rule the language used by the testator would have created an estate fee tail. However, such estates are by statute abolished in Texas, Art. 1291, Vernon's Ann.Civ.Stats. Such an estate, unless limited by express words, would be deemed a fee simple estate in Julia E. Shay. We are of the opinion that applying any of the rules of construction, Mrs. Julia E. Shay, who was living at the time of the testator's death and the consequent vesting of the remainder, took a fee simple title to such remainder.

Under the view we take of the case, we do not deem it necessary to pass on appellants' third point.

Appellants' fourth point complains of the ruling of the court in admitting testimony of Wilson Heard, that after the execution of the will the testator told him about making his will and how he had disposed of his estate therein. We have carefully considered this testimony and find that what the testator told him he had done is, from a reading of the will, just what he did do. The testimony does not attempt to read into the will any provision that is not expressed in the will in clear and unambiguous language. Therefore, such testimony, even if it should not have been admitted, becomes harmless.

The judgment is affirmed.