In the Matter of the GUARDIANSHIP OF Wanda Louise FORTENBERRY, an incapacitated person.

No. 05–07–00173–CV.

Court of Appeals of Texas, Dallas.

Aug. 29, 2008.

John Walter Crumley, Fort Worth, Alex R. Tandy, Law Offices of Alex R. Tandy, P.C., Hurst, TX, for Appellant.

Nathan K. Griffin, D. Woodard Glenn, P.C., Dallas, TX, for Appellee.

Before Justices MOSELEY, LANG, and MAZZANT.

## OPINION

Opinion by Justice MOSELEY.

This case involves the manner in which attorneys can seek payment for work done on behalf of the former guardian of a ward's estate. The facts appear undisput-

ed. Appellants Alex R. Tandy, individually and as president of the law firm of Alex R. Tandy, P.C., and John W. Crumley, individually and as president of the law firm of John W. Crumley, P.C., filed claims seeking payment for services they rendered as attorneys on behalf of the Estate of the Guardianship of Wanda Louise Fortenberry, an Incapacitated Person. They based their claims on the theory of quantum meruit or, in the alternative, unjust enrichment. The statutory probate court disapproved their claims. In four issues, appellants contend the probate court erred in failing to approve their claims. For the following reasons, we affirm the probate court's orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2003, Dallas County Probate Court No. 2 appointed Brenda Sanders as permanent guardian of the Estate of Wanda Louise Fortenberry, an Incapacitated Person.[1] Sanders filed a "Application for Authority to Hire an Attorney to Represent the Ward in Divorce Proceedings." The application, signed by Sanders as guardian, was filed by Tandy and Crumley as attorneys for "Guardian Brenda Sanders, Guardian of the Person and of the Estate of ... Fortenberry...."[2] Thereafter Sanders retained Tandy to file a guardianship application and to represent the guardian in a divorce proceeding involving the ward. Crumley assisted Tandy with the guardianship application and the divorce.

In February 2005, Sanders verified, approved, and filed two Applications for Payment of Attorney's Fees (the February applications), seeking an order authorizing the payment of Tandy's and Crumley's attorneys' fees and expenses from the estate. The application for Tandy's fee was in the amount of $26,699.40; the application for Crumley's fee was in the amount of $13,149.84.[3] Both appellants and appellee state the probate court did not rule on the February applications. See TEX.R.APP. P. 38.1(f) (in civil case, court will accept as true facts stated in brief unless another party contradicts them).

In October 2005, another document, entitled "Application for Payment of Attorney's Fees" was filed (the October 2005 "application"); it sought an order authorizing the applicant to pay Crumley in the amount of $11,111.18.[4] However, the October 2005 "application" was not signed by Sanders; apparently it was filed by Crumley.

In November 2005, appellants filed a motion to withdraw as "attorneys of record for Brenda Sanders, Guardian of the Person and Estate" of Fortenberry. The trial court signed an order granting the motion on December 30, 2005. The order states that appellants

"are hereby authorized to withdraw as attorneys of record for Brenda Sanders,

---

**1.** This information appears on the probate court's docket sheet.

**2.** The record also contains an unsigned order authorizing Sanders, as guardian, to hire Tandy to represent the ward in the divorce proceedings.

**3.** A billing statement attached to the Tandy application itemized services from October 21, 2002 to February 18, 2004. Two billing statements attached to the Crumley application itemized legal services and expenses in-

curred from November 21, 2002 to February 10, 2005. Also attached to the February applications were affidavits from other attorneys stating the fees involved were fair, reasonable, and not excessive.

**4.** A billing statement attached to this application itemized legal services and expenses from March 17, 2005 to October 11, 2005. Also attached to the October "application" were affidavits from other attorneys stating the fees involved were fair, reasonable, and not excessive.

*in her capacity as Guardian of the Person and Estate of [Fortenberry],* and that said attorneys are hereby relieved of any further responsibility of representing Brenda Sanders, *in her capacity as Guardian of the Person and Estate of [Fortenberry],* in the Guardianship. . . ."
(Emphasis added.)

In June 2006, the probate court removed Sanders as guardian of Fortenberry's estate and appointed Griffin as successor guardian. The parties agree that, after Sanders was removed, the probate court told appellants that it could not act on the February applications—signed by Sanders—because she was no longer guardian.

Thereafter, in October 2006, appellants filed with the Dallas County Clerk Authenticated Unsecured Claims, supported by documentation (the October claims).[5] *See* Tex. Prob.Code Ann. § 795 (Vernon 2003). Tandy's October claim was for the same amount as his February application-$26,699.40. Crumley's October claim was for $24,261.02–the total amount of his February application and the October 2005 "application." The October claims were based on appellants' contractual relationship with Sanders and the guardianship estate. On November 15, 2006, appellants filed with the Dallas County Clerk Amended Authenticated Unsecured Claims, again with supporting documentation (the No-

vember claims).[6] *See id.* These are the claims that are at issue here. Tandy's November claim was for the same amount as Sanders's February application regarding his fees (and his October claim)—$26,699.40. Crumley's November claim was for $26,733.51—the total amount of his October claim plus an additional $2,472.49. As discussed in more detail herein, the November claims stated they were based on quantum meruit and unjust enrichment, not contract. The parties agree that Griffin, as successor guardian, allowed the amended claims and that the claims were not contested at the hearing. *See* Tex. R.App. P. 38.1(f).[7]

At the hearing, appellants offered undisputed evidence concerning their representation of Sanders and the guardianship, and the claims they were presenting. Appellants argued their attorney's fees were necessary, fair, and reasonable. On behalf of appellants, Crumley stated that the goods and services he and Tandy provided were received by the guardianship under circumstances that the guardianship realized, or any normal person would realize, that they expected to be paid.

Crumley stated appellants were basing their claims on the theories of quantum meruit or unjust enrichment because they understood that, after Sanders had been removed as guardian, any agreement they

**5.** Attached as exhibits to Tandy's October claim was Sanders's February application concerning his fees and the billing statement and affidavits supporting that application. Attached as exhibits to Crumley's October claim was Sanders's February application concerning his fees, the October 2005 "application," and the billing statements and affidavits supporting those filings.

**6.** Again attached as exhibits to Tandy's November claim were Sanders's February application concerning his fees, and the billing statement and affidavits supporting that application. Attached as exhibits to Crumley's November claim were Sanders's February ap-

plication concerning his fees, the October "application," the billing statements and affidavits supporting those filings, a billing statement for the additional $2,472.49 for legal services and expenses from October 7, 2005 to November 9, 2005, and Crumley's supporting affidavit that the latter amount was fair and reasonable compensation for his services during that period.

**7.** The record contains a Memorandum allowing Tandy's November claim, signed by Griffin. The copy of the Memorandum in the record allowing Crumley's November claim is unsigned by Griffin.

had with her was not enforceable, and thus they no longer had contract claims. Crumley further argued:

We have submitted these in the general claim for an unsecured claim, which is—we had previously submitted them as claims under the portion of the Probate Code that talks about attorneys fees. *And because the Court has told us exactly what the Court has said today,* we have filed them under the other portion of an unsecured claim. And I think the Court needs to consider it the fashion of looking at this as an unsecured claim. . . .

(Emphasis added.)

Thereafter, the probate court stated:

Gentlemen, *I have no question that the services were necessary, they were rendered and were fair and reasonable in the charge. But the problem is I have to have some authority under the Probate Code to pay those attorneys fees. In other words, I cannot carve or quantum meruit requirement of the claim in situations where—the Code states situations where attorneys fees can be awarded.* And I have to have some authority under the Probate Code. . . .

But *your claim is against Mrs. Sanders, individually, because she hired you,* you did the work, she got removed. *And unless you can show me some authority under the Probate Code that I can authorize such a payment—I* would love to have that authority. It won't take much for me to hang my hat on.

(Emphasis added.)

Crumley again responded that they were not asking the court to consider the claims under the provisions of the Probate code relating specifically to attorney's fees. Rather, the claims were being presented as general unsecured claims. He argued by analogy that if he and Tandy were plumbers performing work on properties of the estate they would be at least entitled to file claims for their services under quantum meruit. The probate court responded:

The only problem that I have with that, Mr. Crumley, is that the only way that these fees arose were by virtue of the fact that *Ms. Sanders hired you in her capacity as guardian of the person and estate,* and therefore, that when you were hired in that regard and you were providing professional services, that if Mrs. Sanders had not been removed and she had filed an application to pay the attorneys fees, then the Court authorizes that payment.

But I don't see there's a nexus there because but for the guardianship these fees would not have been generated. And if you're the plumber, once the guardian hires you and says: I want to pay the plumber. Then we [authorize] her to pay the plumber. But we have a situation here and I guess I cannot see—I believe in lawyers being paid and *I don't question at all the quantum meruit aspect of it and the value received and the difficulty you had with Ms. Sanders. But I cannot see that the estate should bear them when the person who was responsible for incurring those attorneys fees has subsequently been removed* because she didn't do what the Code says she ought to do.

(Emphasis added.) The probate court entered orders disapproving the claims, from which appellants appealed.

## II. FAILURE TO FILE FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ Under their first and second issues, appellants say the probate court did not file findings of facts and conclusions of law despite their timely request for such and a timely past-due notice. We note that oral comments from the bench "do not consti-

tute findings of fact and conclusions of law." *Sharp v. Hobart Corp.*, 957 S.W.2d 650, 652 n. 5 (Tex.App.-Austin 1997, no pet.) (citing *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984) (per curiam)). However, fact findings are not necessary when, as here, the facts in question are not disputed. *See Landerman v. State Bar of Tex.*, 247 S.W.3d 426, 430 (Tex.App.-Dallas 2008, pet. dism'd) (citing *Barker v. Eckman*, 213 S.W.3d 306, 310 (Tex.2006)). Where the facts are undisputed and the only matters presented on appeal are legal issues to be reviewed de novo, the failure to file findings of fact and conclusions of law is harmless error. *Id.*

We now address the substance of appellants' issues on appeal.

## III. DISAPPROVAL OF NOVEMBER CLAIMS

In issues one and two, appellants contend the probate court erred in failing to approve the November claims without a finding that the claims were not just and after the probate court "stated at the hearing that [their claims] were just." In issues three and four, appellants argue the probate court erred in failing to approve their November claims against the ward's estate, based on quantum meruit or in the alternative, unjust enrichment. Relying on probate code sections 792 and 799, appellants argue that the only standard for the probate court to disapprove an allowed claim is when the probate court finds the claim is not just. As we understand appellants' brief, they contend: (1) the probate court in effect found the November claims were just; or (2) in the alternative, they proved the justness of the November claims as a matter of law. As relief, appellants request that we reverse and render judgment approving their Amended Authenticated Unsecured Claims.

Appellee Griffin (the successor guardian) does not contest the necessity, fairness, or reasonableness of the November claims and the attorneys' services giving rise to those claims. Instead, his position is that appellees "failed to provide any authority under the Probate Code on which to make their claims for attorneys fees" and that the statutory probate court properly denied the November claims because it correctly concluded it lacked authority to do so. He makes two arguments in support of his contention. First, he asserts that quantum meruit and unjust enrichment are equitable theories of recovery and, as such, are inapplicable because specific statutes govern the payment of attorney's fees under the probate code. Second, he asserts the payment of attorney's fees from a ward's estate is governed exclusively by sections 665B, 665C, and 666 of the probate code, and thus no statutory provisions permit the payment of attorney's fees to attorneys who contract with a guardian who is removed prior to the time the fees are paid or approved.

### A. Standard of Review

■ Where, as here, the trial court does not issue findings of fact and conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794–95 (Tex.2002) (special appearance). Again, however, the record here contains no factual disputes. We review conclusions of law de novo, but affirm the trial court's judgment if it can be sustained on any legal theory supported by the evidence. *See id.* at 794.

■ "Statutory construction is a legal question that we review de novo, ascertaining and giving effect to the Legislature's intent as expressed by the plain and common meaning of the statute's words." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex.2007) (citing *Tex. Dep't of Transp. v. City of Sunset*

*Valley,* 146 S.W.3d 637, 642 (Tex.2004)). *See* Tex. Gov't Code Ann. § 312.002 (Vernon 2005). We read the statute as a whole and not just in isolated portions. *City of Sunset Valley,* 146 S.W.3d at 642. We also consider the objective the law seeks to obtain and the consequences of a particular construction. *Id. See* Tex. Gov't Code Ann. § 312.006 (Vernon 2005) (revised statutes to be liberally construed to achieve their purpose and promote justice).

## B. Discussion

We first address whether the statutory probate court has authority to decide claims based on equitable theories of recovery, such as quantum meruit and unjust enrichment. We then address whether the court had authority to decide a "claim" for attorneys' fees. We then address whether: (1) the probate court found the November claims were just; or (2) in the alternative, whether appellants proved the justness of the November claims as a matter of law.

### 1. Statutory Probate Court's Authority to Consider Equitable Claims

■ A statutory probate court has "jurisdiction over any matter appertaining to an estate or incident to an estate." Tex. Prob.Code Ann. § 606(i) (Vernon Supp. 2008). It may hear "all suits, actions, and applications filed against or on behalf of any guardianship; all such suits, actions, and applications are appertaining to and incident to an estate." *Id.* § 607(b) (Vernon Supp.2008). In a proceeding in a statutory probate court, "the phrases 'appertaining to estates' and 'incident to an estate' in [chapter XIII, entitled 'Guardianship'] include ... all claims by or against a guardianship estate...." *Id.* A "claim" includes a liability against the estate of an incapacitated person. *Id.* § 601(4) (Vernon Supp.2008).

Griffin does not dispute these statutory provisions. Instead, he relies on *In re Guardianship of Estate of Neal,* 406 S.W.2d 496 (Tex.Civ.App.-Houston [1st Dist.] ), *writ ref'd n.r.e.,* 407 S.W.2d 770 (Tex.1966) (per curiam), for the proposition that the statutory probate court cannot consider claims based on equitable theories of recovery, such as appellants' November claims.

In that case, the Probate Court of Harris County denied a guardian's unopposed application for authorization to make a gift of the guardianship assets for estate planning purposes. On appeal, the court of civil appeals surveyed sections of the probate code, including section 32,[8] and stated "this section ... of the Probate Code by its silence denies [by] implication the exercise by the Probate Court of equitable powers." *Id.* at 500.[9] The court affirmed the probate court's decision, concluding no provision of the probate code "expressly or impliedly conferr[ed] upon the court the power and authority to make a gift such as that proposed by" the guardian. *Id.* at 502.

8. At that time, section 32 provided: "The rights, powers and duties of executors, administrators, and guardians shall be governed by the principles of the common law, when the same do not conflict with the provisions of the statutes of this State." Act of Mar. 17, 1955, 54th Leg., R.S., ch. 55, § 32, 1955 Tex. Gen. Laws 88, 98, *amended by* Act of May 30, 1993, 73rd Leg., R.S., ch. 957, § 17, 1993 Tex. Gen. Laws 4080, 4164 (current version at Tex. Prob.Code Ann. § 32 (Vernon 2003)).

9. The court went on to state:
But even if the words, "principles of the common law," are construed to include equitable powers, this section of the code does not grant to the court common law powers, but merely provides that the rights, powers and duties of executors, administrators, and guardians shall be governed by the principles of the common law, when the same do not conflict with the provisions of the statutes of this State.
*Id.*

In contrast to the *In re Guardianship of Estate of Neal* court's decision as to the absence of statutory authority for a guardian to make a gift for tax purposes—or for a probate court to authorize such a gift—the probate code provisions set forth above expressly authorize statutory probate courts to hear all matters appertaining to an estate or incident to a guardian's estate, including all suits, actions, applications, and claims made against the estate. We conclude the statutory probate court has jurisdiction to hear and decide appellants' claims based on quantum meruit or unjust enrichment.

### 2. Claims for Attorney's Fees

■ Next, we address whether the probate code permits an attorney who rendered services on behalf of the guardian and for the benefit of the guardianship estate to file a claim seeking payment of his fees. The successor guardian asserts that the only authority and procedure for the payment of attorneys' fees is found in sections 665B, 665C,[10] and 666.

Section 665B authorizes the probate court, on the request of a person who filed an application to be appointed guardian, to order compensation for an attorney who represented the applicant directly from the available funds of the ward's estate.[11] Section 666 authorizes the court to order that the guardian be reimbursed from the estate for

all necessary and reasonable expenses incurred in performing any duty as a guardian, including reimbursement for the payment of reasonable attorney's fees necessarily incurred by the guardian in connection with the management of the estate or any other guardianship matter.

*Id.* § 666 (Vernon 2003). Based on the use of both the words "reimbursed" and "incurred" in section 666, we read this section as authorizing the court, upon proper application, to order the payment of reasonable and necessary expenses directly to the person providing them.[12] However, all expense charges set forth in an application for payment of expenses, including attorneys' fees, must be

(1) in writing, showing specifically each item of expense and the date of the expense;

(b) The court may not authorize compensation under this section unless the court finds that the applicant acted in good faith and for just cause in the filing and prosecution of the application.

TEX. PROB.CODE ANN. § 665B(a)(1), (b) (Vernon Supp.2008).

---

**10.** It is undisputed that section 665C, entitled "Compensation for Collection of Claims and Recovery of Property," and another provision, section 665A (entitled "Payment for Professional Services") are not relevant to this appeal. *See* TEX. PROB.CODE ANN. §§ 665A, 665C.

**11.** Specifically, section 665B provides:
§ 665B. Compensation of Certain Attorneys
(a) A court that creates a guardianship for a ward under this chapter, on request of a person who filed an application to be appointed guardian of the proposed ward ..., may authorize compensation of an attorney who represents the person who filed the application at the application hearing, regardless of whether the person is appointed the ward's guardian, from:
(1) available funds of the ward's estate:....

**12.** It is common practice for a probate court to authorize payment of "reasonable and necessary" expenses from the assets of the estate directly to the person to whom those expenses are owed, without the necessity of a two-step prerequisite that the guardian first pay the expenses and then seek recompense under the statute. *See, e.g., In re Guardianship of Bayne,* 171 S.W.3d 232 (Tex.App.-Dallas 2005, pet. denied) (application of temporary guardian to pay attorney's fees from assets of ward's estate).

(2) verified by affidavit of the guardian;

(3) filed with the clerk; and

(4) paid only if the payment is authorized by court order.

*Id.* § 667 (Vernon 2003).

We agree with the successor guardian that a guardianship's attorneys' fees are handled generally through these sections. However, nothing in the probate code makes these the exclusive bases for seeking payment for such services. Specifically, nothing in the probate code indicates an attorney cannot seek payment for his or her services through the "claims" procedures set forth in sections 783 through 809.

Texas courts have long held that an attorney who has rendered services on behalf of a probate estate has, as one of his options to obtain payment, the right to file a claim as any other creditor of the estate. *See Hare v. Pendleton,* 214 S.W. 948, 950 (Tex.Civ.App.-Texarkana 1919) (reasonable attorney's fees and other expenses of administration "may be presented and collected by the parties to whom payable, as other claims against the estate"), *rev'd on other grounds,* 231 S.W. 334 (Tex. Comm'n App.1921, judgm't adopted); *Kitchens v.*

*Culhane,* 398 S.W.2d 165, 166 (Tex.Civ. App.-San Antonio 1965, writ ref'd n.r.e.) (attorney's fees, reasonable in amount and necessarily incurred for services to estate, are expenses of administration, and "attorney furnishing same may make his claim as any other creditor direct upon the estate"); *Morton's Estate v. Ferguson,* 45 S.W.2d 419, 420 (Tex.Civ.App.-Eastland 1932, writ ref'd).[13] Although these cases involved probate matters and predecessor statutes to the current probate code, we see no reason the results should differ in a guardianship proceeding under current law.

In fact, the current text of the probate code appears to permit such a procedure. Section 805, which directs the order of payment for "claims against the estate that have been allowed and approved or established by suit," clearly governs and includes claims for "expenses of administration." *See* TEX. PROB.CODE ANN. §§ 805, 805(a)(3). And just as clearly, attorney's fees may be expenses of administration. *See Woollett v. Matyastik,* 23 S.W.3d 48, 52 (Tex.App.-Austin 2000, pet. denied); *State By & Through Tex. Dep't of Mental Health & Mental Retardation v. Ellison,* 914 S.W.2d 679, 683 (Tex.App.-Austin 1996, no writ); *Morton's Estate,* 45 S.W.2d at 420.[14]

---

**13.** From *Morton's Estate:*

> An attorney who has performed necessary services for an estate which is being administered is entitled to have allowed and paid his reasonable fees. Two entirely distinct procedures are open to the attorney. *Gammage v. Rather,* 46 Tex. 105. He may make his claim as any other creditor direct upon the estate. In doing so, he will be governed by the provisions of R.S.1925, title 54, chaps. 18 and 19 (articles 3502–3544). On the other hand, he may elect to hold the representative of the estate to a personal liability....

*Id.,* at 420.

**14.** Further, a contrary holding would unnecessarily restrict the remedies available to an

attorney who ends up in a fee dispute with the guardian. As described above, an attorney cannot invoke the application process under either section 665B or 666 without the participation and support of the guardian. Thus, if an attorney ends up in a dispute with the guardian, and if (as Griffin suggests) he cannot seek payment from the estate's assets through the probate code's claims process, his sole remedy would be to sue the guardian personally and look solely to the guardian's assets for payment. *See Corpus Christi Bank & Trust v. Cross,* 586 S.W.2d 664, 669 (Tex. Civ.App.-Corpus Christi 1979, writ ref'd n.r.e.) (unless otherwise stipulated, assumption is that personal representative, in contracting with third party for professional services to estate, did so in individual capacity;

Further, allowing attorneys to file a claim for payment of their attorney's fees does not render the application process set forth in sections 665B or 666 a nullity. An order for the payment of attorney's fees based on an application under either statute provides additional benefits not available through the claims process, namely, payment on an expedited basis and without regard to section 805's provision that payment only be made "as soon as practicable" and in the statutorily prescribed order. *See* TEX. PROB.CODE ANN. §§ 805, 805(a)(3).

Thus, we conclude the probate code permits attorneys, such as appellants, who rendered services on behalf of the guardian and for the benefit of the guardianship estate to file a claim seeking payment of their fees.

### 3. "Just" Claim Pursuant to Sections 792 and 799

■ Under their first two issues, appellants assert the probate court erred in not approving their November claims pursuant to sections 792 and 799. Under their third and fourth issues, appellants argue they had "valid" quantum meruit and unjust enrichment claims against the estate, which the probate court erred in failing to approve.

Section 792 relates to an unauthenticated claim that has been *paid* by the guardian. *See* TEX. PROB.CODE ANN. § 792 (Vernon 2003).[15] Because neither the original guardian (Sanders) nor the successor guardian (Griffin) paid the November

claims, we conclude section 792 is not relevant to appellants' position. Thus, we overrule appellants' issues with respect to their argument under that section. We now address appellants' argument concerning section 799.

Section 799(c) provides that, although a claim may be properly authenticated and allowed by the guardian,

> if the court is not satisfied that it is just, the court shall examine the claimant and the guardian under oath and hear other evidence necessary to determine the issue. If after the examination and hearing the court is not convinced that the claim is just, the court shall disapprove the claim.

*Id.* § 799(c).

In support of their contention that the probate court erred in not approving their claims, appellants assert two arguments. First, relying on the probate judge's statements on the record that the attorney's fees on which the November claims were based were necessary, fair, and reasonable, appellants argue that the probate court found they were "just," and thus that the probate court was required to approve them under section 799(c). Second, they argue that the evidence they presented proved the "justness" of their claims as a matter of law.

Section 799(c) does not define "just." When interpreting a statute, we read words and phrases in context and construe them according to the rules of grammar and common usage. TEX. GOV'T CODE ANN.

---

consequently, third party may elect to hold representative to personal liability; in such case, representative has right of reimbursement against estate to extent third party's services were necessary and fees were reasonable). This result, which would create a disincentive to attorneys who might be sought to perform services on behalf of a guardian, is not demanded by any language in the probate code.

**15.** Section 792 states:

> A guardian may pay an unauthenticated claim against the estate of the guardian's ward that the guardian believes to be just, but the guardian and the sureties on the bond of the guardian shall be liable for the amount of any payment of the claim if the court finds that the claim is not just.

TEX. PROB.CODE ANN. § 792.

§ 311.011(a) (Vernon 2005). *See Perez v. City of Dallas,* 180 S.W.3d 906, 912 (Tex. App.-Dallas 2005, no pet.). We give words their ordinary meaning. *See Perez,* 180 S.W.3d at 912 (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 866 (Tex.1999)). "Just" is defined as "[l]egally right; lawful; equitable." BLACK'S LAW DICTIONARY 880 (8th ed.2004).

■ We conclude that whether a claim is "just" under section 799 merely means whether, given the facts as found by the factfinder, the claimant is entitled to prevail on his or her claim. Thus, whether the probate court erred in denying appellants' November claims depends on: (1) whether the probate court found in favor of appellants on the elements of their claims but denied them anyway; or (2) whether they proved the elements of their claims as a matter of law.

■ Quantum meruit "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Campbell v. Nw. Nat'l Life Ins. Co.,* 573 S.W.2d 496, 498 (Tex.1978). It is "an equitable remedy which does not arise out of a contract, but is independent of it." *Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990). Generally, a party may recover under quantum meruit only if no express contract covering the services or materials furnished exists. *Id.; Truly v. Austin,* 744 S.W.2d 934, 936 (Tex.1988).

The right to recover in quantum meruit is based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted. *Black Lake Pipe Line Co. v. Union Constr. Co.,* 538 S.W.2d 80, 86 (Tex.1976), overruled on other grounds by *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686 (Tex. 1989); *Commerce, Crowdus & Canton, Ltd. v. DKS Constr., Inc.,* 776 S.W.2d 615, 620 (Tex.App.-Dallas 1989, no writ).

If a valid express contract covering the subject matter exists, there can be no recovery upon a contract implied by law. *Black Lake,* 538 S.W.2d at 86.

*Jensen Constr. Co. v. Dallas County,* 920 S.W.2d 761, 774 (Tex.App.-Dallas 1996, writ denied), *disapproved of on other grounds by Travis County v. Pelzel & Assocs., Inc.,* 77 S.W.3d 246, 251 (Tex. 2002). To recover under quantum meruit a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Vortt Exploration Co.,* 787 S.W.2d at 944; *Bashara v. Baptist Mem'l Hosp. Sys.,* 685 S.W.2d 307, 310 (Tex.1985).

■ Unjust enrichment is not an independent cause of action, but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay. *Walker v. Cotter Properties, Inc.,* 181 S.W.3d 895, 900 (Tex.App.-Dallas 2006, no pet.); *Oxford Fin. Co. v. Velez,* 807 S.W.2d 460, 465 (Tex.App.-Austin 1991, writ denied). The unjust enrichment doctrine applies principles of restitution to disputes where there is no actual contract and is based on the equitable principle that one who receives benefits which would be unjust for him to retain ought to make restitution. *Walker,* 181 S.W.3d at 900; *Burlington N. R.R. Co. v. Sw. Elec. Power Co.,* 925 S.W.2d 92, 98 n. 5 (Tex.App.-Texarkana 1996, *aff'd,* 966 S.W.2d 467 (Tex. 1998); *Bransom v. Standard Hardware,*

*Inc.*, 874 S.W.2d 919, 927 (Tex.App.-Fort Worth 1994, writ denied).

First, we conclude the evidence proved the necessity, fairness, and reasonableness of appellants' November claims as a matter of law. These matters were not disputed below, and are not disputed by the parties here. The evidence also proved as a matter of law that appellants rendered their services under such circumstances as would notify Sanders that appellants were expecting to be paid by her, and that it would be unjust for the estate, and for Sanders as representative of the estate, to retain the benefits of those services without paying for them.

■ However, as the above cases state, a party cannot recover under quantum meruit or unjust enrichment for services provided under a contract. It is undisputed that all of appellants' legal services were provided under express contracts with Sanders before they withdrew as attorneys for Sanders and before Sanders was removed as guardian. It is also undisputed that, as set forth in the probate court's order allowing appellants to withdraw as attorneys of record for Sanders "in her capacity as Guardian of the Person and Estate of [Fortenberry]," that she had contracted with them in at least her representative capacity. (We need not address here whether Sanders is also personally liable for appellants' attorney's fees.)

■ Appellants stated below, and assert here, that they were reduced to filing claims based on these equitable theories because Sanders had been removed as guardian before the probate court ruled on Sanders's February applications, and thus their contracts—or at least their claims based on contract—no longer existed. The essence of appellants' argument is set forth in their November claims: "[I]f an agreement with the former guardian is not enforceable because Brenda Sanders is no longer guardian of the Ward's estate, then the Claimant has a valid Quantum Meruit claim."

■ However, we disagree with appellants' presumption that their contractual claims are not enforceable. A personal representative acts as an agent for the estate when contracting for anything necessary for the administration of the estate. *Ward v. Prop. Tax Valuation, Inc.*, 847 S.W.2d 298, 300 (Tex.App.-Dallas 1992, writ denied) (citing *Cross*, 586 S.W.2d at 669). We see nothing in the probate code that renders null Sanders's actions taken—in her authorized, representative capacity—before she was removed. *See* Tex. Prob.Code Ann. § 666. *See also Cross*, 586 S.W.2d at 670 (whether or not personal representative elects to contract solely in representative capacity, thus avoiding personal liability for necessary services rendered to estate, ultimately estate is liable for all reasonable and necessary services). Thus Sanders's removal is irrelevant to the enforceability of appellants' contractual claims against the estate for reasonable attorney's fees based on services necessarily incurred on behalf of the guardianship during her tenure as guardian.

Additionally, to the extent the November claims relate to the same attorneys' fees sought through the February applications, appellants did not show as a matter of law that their claims of quantum meruit or unjust enrichment were necessary in order to avoid injustice. Again, nothing in the probate code renders null Sanders's actions—taken in her authorized, representative capacity and before she was removed—in contracting for reasonable and necessary attorney's fees on behalf of the guardianship, and nothing prohibits the probate court from considering and ruling on those applications even after Sanders's removal. *See* Tex. Prob.Code Ann. § 666.

We resolve appellants' issues against them.

## IV.  CONCLUSION

Having resolved appellants' issues against them, we affirm the probate court's orders disapproving appellants' Amended Authenticated Unsecured Claims based on quantum meruit and unjust enrichment.