

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00243-CV

PAMELA KAY CARPENTER AND
JEFFREY SCOTT CARPENTER

APPELLANTS
AND APPELLEES

V.

ROBERT JOSEPH CARPENTER,
DAVID TRENT DEATON, JAMES
EARL WARD, EDMOND WAYNE
CARPENTER, FRANKIE MARIE
CARPENTER PERRY, MICHAEL D.
HARRIS, EDMOND POWELL
CARPENTER, JO BETH ROSS,
LAVERNE WARD WILLMOND,
GARY DON CARPENTER, SAMMY
HARRIS, GARY DON MOSLEY,
AND DONALD HOWARD MALLORY

APPELLEES
AND APPELLANTS

----------

## FROM PROBATE COURT NO. 1 OF TARRANT COUNTY

----------

## **MEMORANDUM OPINION**[1]

----------

[1]*See* Tex. R. App. P. 47.4.

Pamela Kay Carpenter (Pam) and Jeffrey Scott Carpenter (Scott) appeal the trial court's judgment ordering that they take nothing on their claim to a share of the assets of an inter vivos trust. On cross-appeal, Robert Joseph Carpenter, David Trent Deaton, James Earl Ward, Edmond Wayne Carpenter, Frankie Marie Carpenter Perry, Michael D. Harris, Edmond Powell Carpenter, Jo Beth Ross, Laverne Ward Willmond, Gary Don Carpenter, Sammy Harris, Gary Don Mosley, and Donald Howard Mallory (collectively, Robert) appeal from the trial court's judgment awarding Pam and Scott attorney's fees. Because we hold that the trial court did not err by granting summary judgment for Robert and by denying summary judgment for Pam and Scott, and because we hold that the trial court did not abuse its discretion by awarding attorney's fees to Pam and Scott, we affirm.

**Background**

On August 7, 1970, Maggie Spain executed a trust agreement which created the Maggie Spain Trust No. One, an irrevocable inter vivos trust. The net income from the trust was to be divided into two equal halves, one half benefitting Jim McKinnon (Maggie's brother-in-law) and the other half benefitting J.M. McKinnon (Maggie's nephew). Upon the death of the survivor of Jim and J.M., the remaining corpus and any undistributed income were to be distributed to seven beneficiaries who were named in the trust agreement. If any of these seven beneficiaries had not survived the termination of the trust, then that person's share would vest in that person's descendants. If the deceased

2

beneficiary had no descendants, then that person's share would vest in the remaining beneficiaries or their descendants.

J.M., who had survived Jim, died on November 24, 2006, at which point the trust terminated by its terms. At that time, only one of the seven named beneficiaries (Appellee Jo Beth Ross) was still alive. Chase Bank, as substitute trustee, was therefore required to determine the identity of any descendants of the six deceased beneficiaries.

On July 2, 2007, Chase Bank filed a declaratory judgment action against Pam, Scott, Robert, and the unknown descendants of the deceased beneficiaries. In its petition, Chase Bank stated that one of the seven named beneficiaries, Jess Carpenter, was deceased, and that his son Charles Carpenter was also deceased. Chase Bank stated that Charles had two step-children, Pam and Scott, whom Charles sometimes referred to as his "children," although, to the best of Chase Bank's knowledge, Charles had never formally adopted them. Chase Bank sought a declaration regarding (1) the identities of the descendants of the six deceased beneficiaries; (2) whether Pam and Scott are descendants of Jess; and (3) the proper percentage share to be distributed to each beneficiary. Pam and Scott filed an answer asserting that they were entitled to be designated as Jess's descendants because Charles had adopted them "by estoppel and equitable estoppel."

Chase Bank filed a motion for summary judgment in which it identified certain individuals as "undisputed beneficiaries" of the trust, including Robert. In

3

its motion, Chase Bank identified Pam and Scott as "disputed beneficiaries" and asserted that Charles had died in 1983, that Charles had no natural children, and that Charles had never formally adopted Pam or Scott but had sometimes referred to them as his children, including in his will. Chase Bank asked the trial court to make a declaration as to whether or not Pam and Scott were Jess's descendants. Robert filed a cross-action for a declaratory judgment that Pam and Scott were not descendants of Jess and therefore were not entitled to any trust assets.

The trial court granted partial summary judgment for Chase Bank, declaring the identities and percentage shares as to the undisputed beneficiaries. This order left open the determination of whether Pam and Scott were descendants of Jess and made no determination as to who was entitled to receive his share of the trust assets.

Robert filed an amended cross-action and a traditional motion for summary judgment, asserting that the doctrine of adoption by estoppel did not apply; that, because Charles had died in 1983, the statute of limitations barred Pam and Scott's claim; and that Pam and Scott could not prove adoption by estoppel because their mother had refused to consent to any such adoption.

Pam and Scott filed an answer to Robert's cross-action, asserting the discovery rule. They claimed that the facts and allegations giving rise to their assertion of their rights as Charles's equitably adopted children were not known

4

and could not have been known to them prior to Chase Bank's initiation of the lawsuit.

Additionally, Pam and Scott filed a no-evidence motion for summary judgment, asserting that Robert had no evidence that their claim was barred by the statute of limitations. They also filed a traditional summary judgment motion, asserting that they were equitably adopted by Charles and were therefore Jess's descendants and entitled to his share of the trust assets.

After a hearing, the trial court denied the motions for summary judgment. But the trial court later sent a letter to the parties stating that the court had reconsidered and was granting Robert's motion for summary judgment. The trial court then held a bench trial on the question of attorney's fees. Pam and Scott's attorney testified that his reasonable and necessary fees were $69,775 and that he had incurred expenses of $3,536. He testified that if the case were appealed, $15,000 would be a reasonable and necessary fee for the appeal, plus another $15,000 if the case were appealed to the Texas Supreme Court.

The trial court signed a partial summary judgment for Robert, stating that the court "finds that the doctrine of adoption by estoppel is unavailable to [Pam and Scott] to establish that they are entitled to take as 'descendants' of Charles." The trial court therefore ordered that Pam and Scott were not descendants of Jess for purposes of the trust. A few weeks later, the trial court entered a final judgment finding that Pam and Scott had been properly joined in the declaratory judgment action by the trustee and that an award of attorney's fees to them was

5

equitable and just. The trial court awarded Pam and Scott $69,775 in attorney's fees, $697.15 in deposition costs, and $7 in court costs. Pam and Scott appealed, and Robert filed a cross-appeal.

## Pam and Scott's Appeal

In their first issue, Pam and Scott argue that the trial court erred by granting Robert's motion for summary judgment. In their second issue, they argue that the trial court erred by denying their motion for summary judgment because they proved adoption by estoppel and because the statute of limitations did not bar their claim.

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[2] We review a summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference and resolving any doubts in the nonmovant's favor.[3] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence

---

[2]Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[3]*Mann Frankfort*, 289 S.W.3d at 848; *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

contrary to the nonmovant unless reasonable jurors could not.[4]  We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented.[5]  When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented.[6]  The reviewing court should render the judgment that the trial court should have rendered.[7]

To determine whether Pam and Scott are entitled to a share of the trust assets, we must look to the trust instrument itself and the law in effect at the time the trust became effective.[8]  We construe a trust instrument in the same manner as a contract.[9]  We construe the trust to ascertain the intent of the maker, as

---

[4]*Mann Frankfort*, 289 S.W.3d at 848.

[5]*See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

[6]*Mann Frankfort*, 289 S.W.3d at 848.

[7]*Id.*

[8]*See Cutrer v. Cutrer*, 162 Tex. 166, 174, 345 S.W.2d 513, 519 (1961) (interpreting the trust instrument to determine the intent of the settlor at the time that the trust was created); *Nail v. Thompson*, 806 S.W.2d 599, 600 (Tex. App.— Fort Worth 1991, no writ) (stating that to determine who should take under a testamentary trust, a court looks to the state of the law at the time the settlor died in conjunction with the language of the trust instrument).

[9]*See Mabrey v. SandStream, Inc.*, 124 S.W.3d 302, 314 (Tex. App.—Fort Worth 2003, no pet.) ("In interpreting contract language, we ascertain the true intentions of the parties as expressed in the entire contract in an effort to harmonize and give effect to all provisions so that none will be rendered

determined from the language used within the four corners of the instrument.[10] We must harmonize all of the instrument's terms to properly give effect to all parts so that none are rendered meaningless.[11]

The trust stated that upon dissolution, its assets would be distributed to the seven beneficiaries named in the trust, or, if any of those people were deceased, "the descendants of such deceased [beneficiaries], per stirpes." The question here is what the term "descendants" means.[12] The term "descendant" means "'one who follows in lineage, in direct (not collateral) descent from a person.'"[13] The term includes children and grandchildren.[14] Thus, if Pam and Scott are, under the law, Jess's grandchildren, then they are his descendants, and under the terms of the trust, they are entitled to Jess's share.

---

meaningless."); *Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied) (applying the same rule to the interpretation of a trust instrument).

[10] *See Mabrey*, 124 S.W.3d at 314; *Eckels*, 111 S.W.3d at 694.

[11] *See Eckels*, 111 S.W.3d at 694.

[12] *Reilly v. Huff*, 335 S.W.2d 275, 279 (Tex. Civ. App.—San Antonio 1960, no writ).

[13] *In re Ray Ellison Grandchildren Trust*, 261 S.W.3d 111, 120 (Tex. App.—San Antonio 2008, pet. denied) (quoting Black's Law Dictionary 476 (8th ed. 2004)).

[14] *Id.*

No one contends that Pam and Scott were legally adopted. But Pam and Scott contend that they are Jess's grandchildren by application of the doctrine of equitable adoption, also known as adoption by estoppel.

The Supreme Court of Texas first began applying what became known as equitable adoption when it held that if the parties in good faith executed and acknowledged an instrument of adoption but failed to record the instrument, and the parties to the adoption "lived in a relationship wholly consistent with that of parent and child," then "those claiming under the adoptive parents were estopped to deny the validity of the instrument of adoption and its recordation."[15] The court also applied the doctrine in cases when no instrument of adoption had been executed but the adoptive parent had received from the child the benefits of the adoption and the child had provided those benefits under the belief that the child had been adopted.[16] Historically, a person who had been adopted in accordance with the statutory requirements could inherit *from* an adoptive parent, but that person could not inherit *through* an adoptive parent.[17] Thus, under the prior law, neither a person whose adoption was upheld on estoppel grounds nor a person

---

[15] *Cavanaugh v. Davis*, 149 Tex. 573, 576, 235 S.W.2d 972, 973–74 (1951); *see also Cubley v. Barbee*, 123 Tex. 411, 432, 73 S.W.2d 72, 83 (1934).

[16] *Jones v. Guy*, 135 Tex. 398, 402, 143 S.W.2d 906, 908 (1940).

[17] *In re Ray Ellison Grandchildren Trust*, 261 S.W.3d at 122.

adopted through the statutory adoption procedure could inherit from a stranger to the adoption (that is, someone other than his or her adoptive parents).[18]

When the trust in this case became effective, however, the legislature had changed the law so that legally adopted children stand in the same position as biological children.[19]  Accordingly, legally adopted children can inherit through their adoptive parents.[20]  Thus, if Pam and Scott had been adopted under the statutory procedures, at the time the trust became effective, they would have been included within the word "descendants."[21]

The Texas Supreme Court has consistently declined, however, to give equitable adoption the same status as legal adoption.  That court has expressly held that equitable adoption does not have all of the same legal consequences of a statutory adoption and, importantly for this case, does not create a legal status of parent and child.[22]  And the court expressly rejected the argument that under

---

[18]*See id.*

[19]*Id.* at 123.

[20]*Id.*

[21]*See Cutrer*, 162 Tex. at 174, 345 S.W.2d at 519; *Nail*, 806 S.W.2d at 600.

[22]*Moran v. Adler*, 570 S.W.2d 883, 888 (Tex. 1978); *Heien v. Crabtree*, 369 S.W.2d 28, 29–30 (Tex. 1963); *Asbeck v. Asbeck*, 369 S.W.2d 915, 916 (Tex. 1963).

section 3(b) and section 40 of the probate code[23] (the sections of the probate code on which Pam and Scott rely), an equitably adopted child has all of the same rights under the laws of descent and distribution as would a biological child.[24]  The court noted that the language of section 3(b) "indicates a legislative assumption that our courts had held that a child may be adopted by acts of estoppel, and thus that a legal status of parent and child is created by acts of estoppel.  Not so."[25]  The court held that notwithstanding the language of those sections of the probate code, under the law, a person cannot be adopted by estoppel, and estoppel cannot create the legal status of parent and child.[26]

Pam and Scott attempt to distinguish *Heien* and *Asbeck* on the facts, but although those cases did not address the exact factual situation at issue in this case, the Texas Supreme Court's statement of the law in those cases does apply,[27] and the legislature has not amended the statutory language since that

---

[23]Tex. Prob. Code Ann. § 3(b) (defining "child" to include a child adopted "by acts of estoppel"), § 40 (allowing for inheritance through an adoptive parent) (West 2003).

[24]*Asbeck*, 369 S.W.2d at 916.

[25]*Heien*, 369 S.W.2d at 29–30.

[26]*Id.*

[27]*See Lubbock Cnty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) (stating that once the Supreme Court announces a proposition of law, the decision becomes binding precedent, and "it is not the function of a court of appeals to abrogate or modify established precedent"); *Curry v. Williman*, 834 S.W.2d 443, 445 (Tex. App.—Dallas 1992, writ denied) (noting that the legislature had not amended the statutory language since *Heien*).

court's decision in *Heien* and *Asbeck*. We are bound to follow the law as set out by that court.[28] If equitable adoption does not create the legal status of parent and child, then even if Charles (and those claiming through him) would have been estopped from denying that he had adopted Pam and Scott, this does not cause Pam and Scott to be Charles's children under the law. We conclude therefore that, as a matter of law, the term "descendant" does not include equitably adopted children and that Maggie did not intend to include equitably adopted children.[29] Consequently, we do not address Pam and Scott's arguments with respect to the statute of limitations. We overrule Pam and Scott's first and second issues.

In their third issue, Pam and Scott argue that the trial court erred by reducing the award of costs to them and by refusing to award uncontroverted attorney's fees for appeals of this case. We disagree.

Chase Bank sued Pam and Scott under the trust code and under the Declaratory Judgment Act. For actions brought under either of these statutory provisions, the trial court has discretion to award or deny attorney's fees, including the discretion to award fees to the prevailing or nonprevailing party.[30]

---

[28]*Lubbock Cnty.*, 80 S.W.3d at 585.

[29]*See Cutrer*, 162 Tex. at 174, 345 S.W.2d at 519 (determining the settlor's intent at the time that the trust was created); *In re Ray Ellison Grandchildren Trust*, 261 S.W.3d at 120 (considering the term "descendents").

[30]Tex. Prop. Code Ann. § 114.064 (West 2007); Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008); *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.

Under both statutory provisions, an award of fees must be reasonable and necessary, which are fact questions, as well as equitable and just, which are questions of law left to the trial court's discretion.[31]

Pam and Scott complain about the trial court's refusal to award them what they contend were uncontroverted appellate fees and its decision to reduce their "uncontroverted trial expenses." But this court has held that with respect to attorney's fees in declaratory judgment actions, the trial court has the discretion to award less than the amount determined to be reasonable and necessary or to not award any fees at all.[32]

Furthermore, the case that Pam and Scott primarily rely upon, *Ragsdale v. Progressive Voters League*,[33] is distinguishable because the statute in that case did not require the trial court to consider whether an award of fees and costs was equitable and just. The statutes at issue here, however, expressly require the

---

1998); *Smith v. Huston*, 251 S.W.3d 808, 830 (Tex. App.—Fort Worth 2008, pet. denied); *Lesikar v. Moon*, 237 S.W.3d 361, 375 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

[31]*Bocquet*, 972 S.W.2d at 21; *Lesikar*, 237 S.W.3d at 375.

[32]*NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 468 (Tex. App.—Fort Worth 2007, no pet.); *see also Bocquet*, 972 S.W.2d at 21 (noting that a "court may conclude that it is not equitable or just to award even reasonable and necessary fees").

[33]801 S.W.2d 880, 882 (Tex. 1990).

trial court to make that consideration.[34]  In other words, in the case relied on by Pam and Scott, whether the fees were reasonable and necessary was the only relevant consideration, whereas in this case, the trial court had to consider whether the fees were reasonable and necessary as well as whether an award of fees was equitable and just.  And the other cases relied upon by Pam and Scott discussed the *reasonableness* of attorney's fees, a fact issue on which uncontradicted evidence of such fees would have relevance.  Those cases did not hold that when evidence of fees is uncontroverted, the failure to award them is, as a matter of law, not equitable and just.[35]

Furthermore, *Ragsdale* and all of the other cases relied upon by Pam and Scott discuss the reasonableness of an award of attorney's fees to the *prevailing* party.[36]  Not one of the cases discusses whether the denial of an award of attorney's fees to a nonprevailing party is not equitable and just merely because the evidence of the fees is uncontroverted.  And although the trial court's

---

[34]*Compare* Tex. Elec. Code Ann. § 253.131(e) (West 2003) *with* Tex. Prop. Code Ann. § 114.064 *and* Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

[35]*See Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009); *Midland W. Bldg. L.L.C. v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739 (Tex. 2009).

[36]*See Smith*, 296 S.W.3d at 548; *Midland W. Bldg.*, 300 S.W.3d at 739; *Innovative Mailing Solutions, Inc. v. Label Source, Inc.*, No. 02-09-00129-CV, 2010 WL 395219, at *5 (Tex. App.—Fort Worth Feb. 4, 2010, no pet.) (mem. op.); *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 516 (Tex. App.—Fort Worth 2009, no pet.); *In re S.N.A.*, No. 02-07-00349-CV, 2008 WL 4938108, at *2 (Tex. App.—Fort Worth Nov. 20, 2008, no pet.) (mem. op.); *Lee v. Perez*, 120 S.W.3d 463, 469 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

14

conclusion that an award was equitable and just was a prerequisite to Pam and Scott's entitlement to an award of fees and costs, Pam and Scott make no argument about why the denial in this case was not equitable or just. Accordingly, we hold that the trial court did not abuse its discretion by reducing the award of costs to them and by refusing to award uncontroverted attorney's fees for appeals of this case. We overrule their third issue.

### Robert's Cross-Appeal

In his brief, Robert does not separate his arguments by issue. Instead, he makes arguments and then indicates parenthetically which issues each argument supports. Accordingly, rather than addressing his issues in turn, we will address his arguments one by one and then state our holding as to all of the issues at the end of our analysis.

All of Robert's arguments relate to two basic complaints: that the award of attorney's fees was not equitable and just and that the evidence was insufficient to support the award.

*Sufficiency of the Evidence as to "Equitable and Just"*

Robert's first argument relates both to the sufficiency of the evidence and to whether it was equitable and just. He argues that the trial court abused its discretion by awarding attorney's fees to Pam and Scott because there was no evidence that awarding such fees would be equitable or just. He therefore impliedly argues that whether an award is equitable and just is a fact question on which Pam and Scott had the burden of proof.

15

But the question of whether an award of fees is equitable and just is not a question of fact; it is a question of law, and a matter that is committed to the trial court's sound discretion.[37]  Whether to award fees depends on the trial court's conclusion about whether an award is equitable and just based on all the circumstances of the case, not just on evidence presented by the party seeking the award.[38]

Pam and Scott did put on evidence regarding the reasonableness and necessity of the fees, and the trial court was well aware of the circumstances of the case, including the history of the proceedings in the case and the fact that Pam and Scott asserted a claim to the trust assets only after being brought into the suit by Chase Bank.  Once they were brought into the suit, Pam and Scott had the right to assert any claims or defenses that were not groundless and brought in bad faith or for the purpose of harassment.[39]

---

[37] *See Bocquet*, 972 S.W.2d at 21 (stating that on review, the court of appeals must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary or when the award was inequitable and just); *Smith*, 251 S.W.3d at 830.

[38] *See, e.g., In re Estate of Kuykendall*, 206 S.W.3d 766, 772 (Tex. App.—Texarkana 2006, no pet.) ("The trial court's decision whether to award attorney's fees in a declaratory judgment case depends on the court's conclusion whether it is just and equitable to do so under all the circumstances of the case, not on the quantum of proof as to the amount incurred or the reasonableness and necessity of such fees.").

[39] *See* Tex. R. Civ. P. 13, 85, 97.

Robert contends that Pam and Scott's attorney admitted that "this particular issue is not one that we believe has much support or even discussion in Texas case law." But from the context of the attorney's statement (including the remainder of that sentence—"so it is a novel situation which required extensive research because of the facts necessary, in my opinion, to prove adoption by estoppel, or equitable adoption"—which Robert did not include in his brief), it is clear that the attorney was saying that this area of law was not well-developed and required him to conduct extensive research. Robert points to no other evidence that Pam and Scott's claims were brought in bad faith or for purposes of harassment. Thus, the trial court may have considered that Pam and Scott pursued no claims against the trust until they were brought into the case, that their claims were not asserted in bad faith or for purposes of harassment, and that the law under these particular facts had not been definitively established in this jurisdiction. And, despite Robert's assertion to the contrary, after putting on evidence about the reasonableness and necessity of attorney's fees, Pam and Scott were not required to put on separate, distinct evidence on the question of law as to whether an award of fees was also equitable and just. We therefore overrule Robert's argument that there was no evidence that the award of such fees would be equitable and just and that the trial court therefore abused its discretion by awarding such fees.

*Whether Guiding Principles Support The Award as Equitable and Just*

Robert further argues that no guiding principles support the trial court's award of fees as just and equitable and that the award was arbitrary, unreasonable, and an abuse of discretion. Robert asserts three subarguments. First, he argues that the award of fees was not fair and right, and therefore was not equitable and just, when the doctrine of equitable estoppel did not apply to this case as a matter of law, Pam and Scott knew that their mother had refused to let Charles adopt them, and their claim was barred by limitations.

We disagree with Robert's contention that because under the law, Pam and Scott's claim for equitable estoppel was "insurmountably precluded," an award of attorney's fees to them could not be equitable and just. As stated, Pam and Scott asserted a right to the trust assets only after they were brought into court by Chase Bank. And we cannot say that the trial court abused its discretion if it concluded that Pam and Scott did not pursue a claim while knowing that it was "insurmountably precluded" under the law when, as noted above, the law at one time did treat legally adopted and equitably adopted children the same regarding inheritance rights; the statutes governing inheritance of adopted children, on their face, appear to support their claim; and neither the Texas Supreme Court nor this court has directly addressed the question presented here. We therefore reject Robert's argument that, on this ground, awarding Pam and Scott their attorney's fees was not "fair and right" and was therefore not equitable and just.

18

Robert next argues that the award was not equitable and just because it did not benefit the trust. In support of this argument, he states that section 799 of the probate code allows a probate court to deny a claim against an estate if the court is not convinced that the claim is just.[40] He then points to a case in which the Dallas Court of Appeals sustained an award of attorney's fees assessed against an estate on the ground that it would be unjust for an estate to retain the benefits of an attorney's services without paying for them when the evidence proved that the services had been rendered under such circumstances as would notify the estate's representative that the attorneys were expecting to be paid by the representative.[41]

Robert argues that here, unlike in *Fortenberry*, Pam and Scott's claim did not benefit the trust. Thus, he appears to argue, because it is just to award attorney's fees for a party whose claims benefit an estate, it is therefore unjust to award attorney's fees against a trust to a party whose claims do not benefit the trust. Neither section 799 nor *Fortenberry* supports this conclusion, and Robert cites to no other authority in support of his argument.[42] And, as Robert

---

[40]*See* Tex. Prob. Code Ann. § 799(c) (West 2003) ("[I]f the court is not satisfied that [a claim] is just, the court shall examine the claimant . . . and hear other evidence necessary to determine the issue. If . . . the court is not convinced that the claim is just, the court shall disapprove the claim.").

[41]*See In re Guardianship of Fortenberry*, 261 S.W.3d 904, 914 (Tex. App.—Dallas 2008, no pet.).

[42]*See* Tex. R. App. P. 38.1(i) (requiring briefs to contain clear and concise arguments "with appropriate citations to authorities").

acknowledges in his brief, section 799 is not applicable to this case. Both section 799 and *Fortenberry* relate to authenticated claims against a guardianship estate and not to an award of attorney's fees in an action involving a trust. Accordingly, we reject this part of Robert's argument regarding whether the award was equitable and just.

Finally under this argument, Robert asserts that the award was not equitable and just because Pam and Scott did not prevail on their claim of equitable adoption. He points out that some courts have expressly held that it is not equitable and just to award attorney's fees to a party who does not prevail and that this court has routinely linked a party's right to recover attorney's fees in a declaratory judgment action to whether the party prevailed.

Robert is correct that some courts have reversed awards for attorney's fees as not equitable and just upon reversing a declaratory judgment upon which the attorney's fees had been premised.[43] But this court has never set a bright line rule that it is never equitable and just to award attorney's fees to a nonprevailing party. Instead, this court has repeatedly noted that a trial court has the discretion in a declaratory judgment proceeding to award fees to the nonprevailing party.[44] Whether the party prevailed in the action is a factor for the

---

[43]*See Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 143 (Tex. App.—Waco 2005, pet. denied); *Treetop Apartments Gen. P'ship v. Oyster*, 800 S.W.2d 628, 630 (Tex. App.—Austin 1990, no writ).

[44]*See City of Willow Park v. Bryant*, 763 S.W.2d 506, 511 (Tex. App.—Fort Worth 1988, no writ); *see also Rhino Real Estate Invs., Inc. v. City of Runaway*

trial court to consider and, in some cases, may be the most important factor, but it is not alone determinative. Accordingly, we reject Robert's argument that because Pam and Scott did not prevail, an award of attorney's fees to them was necessarily not equitable and just. We hold that the "guiding principles" relied on by Robert in his argument that an award was not equitable or just do not demonstrate that the trial court abused its discretion in making the award. To the extent that Robert's four issues rely on these arguments, we overrule that part of each issue.

*Sufficiency of the Evidence*

Robert's third issue asserts that the trial court abused its discretion in allowing counsel for Pam and Scott to testify about attorney's fees over an objection by Robert based on the failure of Pam and Scott to produce their attorney's fee agreement in response to requests for disclosure. Robert contends that because they failed to produce their fee agreement in response to a request for disclosure under civil procedure rule 194.1, then under rule 215.2[45]

---

*Bay*, No. 02-08-00340-CV, 2009 WL 2196131, at *4 (Tex. App.—Fort Worth July 23, 2009, no pet.) (mem. op.); *Baker Boulevard Partners, Ltd. v. Sparks*, No. 02-06-00302-CV, 2007 WL 2460362, at *1 n.4 (Tex. App.—Fort Worth Aug. 29, 2007, no pet.) (mem. op.); *Noe v. McLendon*, No. 02-06-00062-CV, 2007 WL 2067844, at *3 (Tex. App.—Fort Worth July 19, 2007, no pet.) (mem. op.).

[45]We assume Robert intended to cite rule 193.6(a). Rule 193.6(a) provides that a party who fails to make a discovery response in a timely manner may not introduce evidence on the information that was not disclosed unless the trial court finds that there was good cause for the failure to disclose and the other parties will not be unfairly surprised or prejudiced by the disclosure. Tex. R. Civ. P. 193.6(a). Rule 215.2 relates to discovery sanctions and merely gives a trial

21

and this court's opinion in *Texas Municipal League Intergovernmental Risk Pool v. Burns*,[46] Pam and Scott were required to put on evidence that there was good cause for their failure to timely disclose the fee agreement and that the failure to disclose it would not unfairly surprise or prejudice Robert. Robert argues that because Pam and Scott put on no such evidence, the trial court should have refused to allow Pam and Scott to put on testimony about their attorney's fees.

Robert does not point this court to any place in the record showing that he tendered to Pam and Scott a request for the production of the fee agreement with their attorney.[47] Pam and Scott point out that Robert did request the disclosure of information, in accordance with rule 192.3(e),[48] relating to any testifying experts, including the expert's name and contact information, subject matter on which the expert will testify, the general substance of the expert's mental impressions and opinions, and "[a]ll documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or

---

court discretion to prohibit a party from introducing a matter into evidence when the party failed to comply with discovery requests. Rule 193.6(a)'s exclusion of evidence, on the other hand, is mandatory. *See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006); *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992).

[46]*See* 209 S.W.3d 806, 817 (Tex. App.—Fort Worth 2006, no pet.).

[47]*See* Tex. R. Civ. P. 192.1(b) (providing that a party may request the production and inspection of documents and tangible things).

[48]*See* Tex. R. Civ. P. 192.3(e) (listing the information that is discoverable with respect to a testifying expert).

for the expert *in anticipation of the expert's testimony*." [Emphasis added.] And Pam and Scott provided this information with respect to their attorney. They disclosed the identity and contact information of their attorney, the fact that he would testify regarding attorney's fees, and that he was "expected to testify that the attorneys' fees sought by [Pam and Scott] through trial . . . are reasonable and necessary" and that "[t]hose fees are expected to be at least $60,000 through trial." The only request for the production of any documents under this request for disclosure were for those documents that were provided to, reviewed by, or prepared in anticipation of the expert's testimony. Robert does not argue that the fee agreement between Pam and Scott and their attorney was prepared, reviewed, or provided to the attorney in anticipation of the attorney's testimony. Because Robert did not request the production of the fee agreement, Pam and Scott were not required to produce it. Accordingly, they were not required to show good cause for or the lack of surprise or prejudice resulting from the failure to produce it.

The cases cited by Robert are distinguishable. In *Texas Municipal League Intergovernmental Risk Pool*, the appellants had made requests for disclosure and for production of documents, and it was undisputed that they had requested the case notes of appellee's attorneys and the billing records regarding their fees.[49] Similarly, *Comerica Bank-Texas v. Hamilton* is distinguishable in that it

---

[49]209 S.W.3d at 816.

23

was decided under former rule of procedure 215(5), and, in that case, Hamilton had sought discovery of "[a]ll reports of experts, and all documents that have been reviewed and/or relied upon by any of [the Bank's] experts," as well as "[a]ll documents evidencing or relating to [the Bank's] claims for attorney's fees . . . , including the attorney's fees statements and/or billings for which [the Bank] will seek recovery of herein."[50] In this case, Robert has not pointed out any evidence in the record that he requested the production of Pam and Scott's agreement with their attorney regarding fees. Thus, Pam and Scott could not be subject to rule 193.6's mandatory penalty for failure to disclose the agreement and were not required to establish the exception to the rule for good cause and a lack of prejudice or surprise. We therefore hold that the trial court did not abuse its discretion by allowing Pam and Scott's attorney to testify about his attorney's fees.

Robert's argument that there was no evidence to show that the award was reasonable or necessary was premised on his argument that the trial court should have excluded the testimony of Pam and Scott's attorney for failing to disclose the fee agreement. He makes no other argument about the sufficiency of the evidence regarding the reasonableness or necessity of the attorney's fees and whether Pam and Scott's attorney should not have been allowed to testify. Accordingly, we overrule Robert's third and fourth issues. Furthermore, because

---

[50]No. 05-93-001804-CV, 1997 WL 421214, at *2 n.2 (Tex. App.—Dallas July 28, 1997, no writ) (not designated for publication).

we have overruled all of Robert's arguments about the sufficiency of the evidence regarding whether the award was equitable and just, we overrule Robert's first and second issues.

## Conclusion

Having overruled Pam and Scott's three issues and Robert's four issues, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, MEIER, and GABRIEL, JJ.

DELIVERED:  October 27, 2011